■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v MICHAEL L. ALLEN, Respondent. [933 NYS2d 756]—

McCarthy, J.

The trier of fact may apply logic, common sense and everyday experience to interpret the admitted evidence, but may not engage in conduct that tends to put the factfinder in possession of evidence that was not introduced (*see People v Brown*, 48 NY2d 388, 393 [1979]). Supreme Court's experiment here went beyond merely applying everyday experience (*see id.* at 394) or observing the properties of the physical evidence itself (*see People v Gerard*, 10 AD3d 579, 579-580 [2004], *lv denied* 4 NY3d 744 [2004] [affirming where jury was permitted to look down courthouse hallway through binoculars in evidence]; *People v Gomez*, 273 AD2d 160, 161 [2000], *lv denied* 95 NY2d 890 [2000] [permitting jury to observe sound made by dropping pistol admitted in evidence]; *People v Engler*, 150 AD2d 827, 830-831 [1989], *lv denied* 75 NY2d 770 [1989] [finding no error, and mere application of everyday experience to issues at trial, where jurors filled a vaporizer, in evidence, with water and operated it in the jury room]). The court inserted a light bulb of some kind, attached a power source, and viewed the tail light assembly—

which had been admitted as an exhibit—under different conditions (*compare People v Legister*, 75 NY2d 832, 832-833 [1990]). By doing this after the close of the hearing without informing the parties, the court deprived the parties of the opportunity to address the differences in conditions between the experiment and the actual incident. For example, it is unclear whether the court attached the tail light assembly to a vehicle, what kind of light bulb was used, where the light bulb was placed in relation to the hole in the tail light lens and what other environmental factors were present. A trier of fact should not be permitted to conduct a test that is "not comparable in location, lighting, or type of [vehicle]" (*People v Brown*, 48 NY2d at 395; *see People v Isaac*, 214 AD2d 749, 750 [1995], *lv denied* 86 NY2d 782 [1995] [approving of trial court's refusal to allow jury to put a gun in the pocket of a pair of shorts, both in evidence, because circumstances would be different than when defendant was wearing the shorts and possibly had other objects in his pocket]), especially where the test is "directly material to a critical point at issue" (*People v Legister*, 75 NY2d at 833). Here, the critical point was the color of the light emanating from defendant's tail light. Supreme Court erred when it went beyond the evidence admitted at the hearing and addressed that critical issue by conducting an experiment outside the presence of, and without notice to, the parties.

Considering the evidence and ignoring Supreme Court's improper experiment, the deputy lawfully stopped defendant's vehicle, requiring denial of the suppression motion on that basis. "[T]he police may lawfully stop a vehicle based on a reasonable suspicion that there has been a Vehicle and Traffic Law violation" (*People v Rorris*, 52 AD3d 869, 870 [2008], *lv denied* 11 NY3d 741 [2008]). However, reasonable suspicion cannot be based on a mistake of law; "[w]here the officer's belief is based on an erroneous interpretation of law, the stop is illegal at the outset and any further actions by the police as a direct result of the stop are illegal" (*Matter of Byer v Jackson*, 241 AD2d 943, 944-945 [1997]; *see People v Rose*, 67 AD3d 1447, 1449 [2009]; *see also People v Gonzalez*, 88 NY2d 289, 296 [1996]). The deputy testified that he stopped defendant's vehicle because he saw bright white light emanating from the tail light, which he believed was a violation of a statute that requires vehicles to display "at least two lighted lamps on the rear, one on each side, which lamps shall display a red light visible from the rear for a distance of at least one thousand feet" (Vehicle and Traffic Law § 375 [2] [a] [3]). Supreme Court found that, due to the quarter-sized hole in the red tail light lens, both red and white light shone through the left rear tail light.

The legal question thus presented is whether Vehicle and Traffic Law § 375 requires a rear lamp to display only red light or if a combination of red and white light satisfies the statute. The statute's plain language mandates that rear lamps "shall display a red light," without mentioning any other colors (Vehicle and Traffic Law § 375 [2] [a] [3]). We hold that the statute requires a tail light to display only red light. This interpretation is supported by another subdivision of the same statute requiring that vehicles "shall be equipped with at least one back-up light" that "shall display a white light to the rear when the ignition switch is energized and reverse gear is engaged" (Vehicle and Traffic Law § 375 [34]). White light emanating from a tail light, whether alone or along with red light, could confuse other motorists and lead them to believe that the vehicle is in reverse gear, as white is the color of backup lights that "shall not be lighted when the motor vehicle is in forward motion" (Vehicle and Traffic Law § 375 [34]). The safety aspects of the equipment statute can only be fully realized if tail lights are entirely red and backup lights are white.

Through the deputy's testimony, the People met their initial burden of showing that the stop was lawful (see *People v Dodt*, 61 NY2d 408, 415 [1984]; *People v Willette*, 42 AD3d 674, 675 [2007], *lv denied* 9 NY3d 883 [2007]). Even excluding Supreme Court's improper experiment that found both red and white light emanating from the tail light, a reasonable observation of the tail light assembly that was admitted into evidence would lead to the conclusion that white light would be visible through the quarter-sized hole. As defendant's broken tail light constituted a violation of the Vehicle and Traffic Law, he failed to meet his burden to prove that the stop was unlawful (see *People v Berrios*, 28 NY2d 361, 367 [1971]), and was not entitled to suppression on that basis. Because Supreme Court did not review the remaining issues on the suppression motion, finding them moot in light of its finding regarding the legality of the stop, we remit for that court to address those issues.

Mercure, J.P., Malone Jr., Stein and Egan Jr., JJ., concur. Ordered that the order is reversed, on the law, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision.