=================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
-----------------------------------------------------------------
No. 50
The People &c.,
          Appellant,
        v.
Rebecca Guthrie,
          Respondent.


          Bruce Rosekrans, for appellant.
          Andrew D. Correia, for respondent.




STEIN, J.:

          In this appeal, we are asked to decide whether there is

probable cause to make a traffic stop for a suspected violation

of law in accordance with article I, § 12 of the New York State

Constitution and the Fourth Amendment of the United States

Constitution if the justification for the stop is based upon a

- 1 -

police officer's objectively reasonable, but mistaken, view of the law. We conclude that where, as here, the officer's mistake about the law is reasonable, the stop is constitutional.

I

At approximately 12:15 a.m. on September 27, 2009, a police officer stopped defendant's vehicle after observing the vehicle drive past a stop sign without stopping. The stop sign was located at the edge of a supermarket parking lot in the Village of Newark, Wayne County, and defendant was exiting the lot onto a public street. Upon stopping defendant, the officer smelled a strong odor of alcohol. After defendant failed field sobriety tests and a breath analysis revealed that her blood alcohol level was over the legal limit, the officer arrested defendant and charged her with failing to stop at a stop sign in violation of Vehicle and Traffic Law § 1172 (a) and driving while intoxicated under Vehicle and Traffic Law § 1192 (2) and (3).

Asserting lack of probable cause for the initial stop, defendant moved to suppress the evidence resulting therefrom. The Newark Village Court took judicial notice of the location of the stop sign and that it was not registered in the Village Code (see Newark Village Code § 140-46). The court granted the suppression motion and dismissed the charges on the ground that the stop was not justified because the stop sign was not properly

registered, as required by Vehicle and Traffic Law § 1100 (b).[1] County Court of Wayne County affirmed, concluding that because the stop sign was not legally authorized, the traffic stop was improper because the officer's good faith was insufficient to "blink away any irregularities in the laws he [was] attempting to enforce."  A Judge of this Court granted the People leave to appeal (22 NY3d 1156 [2014]), and we now reverse.

II

As this Court has previously explained, "any exercise of police power under the Fourth Amendment of the United States Constitution and our State constitutional corollary must be reasonable -- a seizure by the police may not be arbitrary" (People v Robinson, 97 NY2d 341, 353 [2001]; see Heien v North Carolina, ___ US ___, ___, 135 S Ct 530, 536 [2014]).  A traffic stop is a seizure and is permissible under the Fourth Amendment and article I, § 12 of the State Constitution when "a police officer has probable cause to believe that the driver of an automobile has committed a traffic violation" (Robinson, 97 NY2d at 349; see Whren v United States, 517 US 806, 809-810 [1996]). Probable cause, in turn, "does not require proof sufficient to warrant a conviction beyond a reasonable doubt but merely

---

[1]  As relevant here, Vehicle and Traffic Law § 1100 (b) provides that the rules of the road "relating to obedience to stop signs . . . shall apply to a parking lot only when the legislative body of any city, village or town has adopted a local law, ordinance, rule or regulation ordering such signs."

information sufficient to support a <u>reasonable belief</u>
that an offense has been or is being committed or that evidence
of a crime may be found in a certain place" (<u>People v Bigelow</u>, 66
NY2d 417, 423 [1985] [emphasis added]; <u>see</u> <u>Ornelas v United</u>
<u>States</u>, 517 US 690, 696 [1996]).  Thus, "[a] police officer who
can articulate credible facts establishing reasonable cause to
believe that someone has violated a law has established a
reasonable basis to effectuate a [traffic] stop" (<u>Robinson</u>, 97
NY2d at 353-354).

Generally, a traffic stop is justified when an officer
observes a vehicle fail to stop at a stop sign (<u>see</u> Vehicle and
Traffic Law § 1172 [a]; <u>People v Davis</u>, 32 AD3d 445, 445 [2d Dept
2006], <u>lv</u> <u>denied</u> 7 NY3d 924 [2006]).  However, the parties here
are in agreement that the stop sign at issue was not legally
valid because it was not properly registered as required by
Vehicle and Traffic Law § 1100 (b).  Thus, the People concede
that defendant could not be prosecuted for a stop sign violation.
Nevertheless, the People argue that the traffic stop was
constitutionally justified because the officer observed what he
reasonably believed to be a violation of the Vehicle and Traffic
Law.  Defendant counters that the officer made a mistake of law
and that such a mistake, even if reasonable, can never provide
justification for a traffic stop.

Although defendant and the dissent correctly note that
the officer's good faith belief that she violated the Vehicle and

Traffic Law was not sufficient to justify the traffic stop (see Bigelow, 66 NY2d at 426-427), the relevant question before us is not whether the officer acted in good faith, but whether his belief that a traffic violation had occurred was objectively reasonable (see People v Estrella, 10 NY3d 945, 946 [2008], cert denied 555 US 1032 [2008]; see also Robinson, 97 NY2d at 349-350, 353-354).[2] Recently, in Heien v North Carolina, the Supreme Court of the United States clarified that the Fourth Amendment tolerates objectively reasonable mistakes supporting such a belief, whether they are mistakes of fact or mistakes of law (135 S Ct at 539). Heien involved a traffic stop of a vehicle that had only one working brake light, which the officer mistakenly believed to be a violation of North Carolina law (see id. at 534-535). The Court noted that, in its more recent precedent, it had "recognized that searches and seizures based on mistakes of fact can be reasonable," and concluded that "[t]here is no reason, under the text of the Fourth Amendment or our precedents," why the same result should not be acceptable "when reached by way of a similarly reasonable mistake of law" (id. at 536). Citing a

---

[2] This distinction is significant in that a mistake of law that is merely made in "good faith" will not validate a traffic stop; rather, unless the mistake is objectively reasonable, any evidence gained from the stop -- whether based on a mistake of law or a mistake of fact -- must be suppressed. Thus, contrary to the dissent's suggestion, our holding in this case does not represent a limitation on the rule set forth in People v Bigelow (66 NY2d 417 [1985]) that there is no good faith exception to the exclusionary rule (see id. at 427).

number of its 19th-century decisions "explaining the concept of
probable cause" (id. at 537), the Court stated that its "cases
dating back two centuries support treating legal and factual
errors alike in this context" (id. at 536-537).  In light of "the
reality that an officer may suddenly confront a situation in the
field as to which the application of a statute is unclear --
however clear it may later become" (id. at 539 [internal
quotation marks omitted]) -- the Court concluded that the
officer's misreading of the statute at issue, which was
susceptible of multiple interpretations and had not been
definitively construed by the North Carolina appellate courts,
amounted to a reasonable mistake of law justifying the traffic
stop (see id. at 540).  Thus, while the defendant could not be
prosecuted under North Carolina law for having only one brake
light, his cocaine-trafficking conviction -- which flowed from a
search incident to the traffic stop -- was upheld (see id.).

        Similarly, in People v Estrella, this Court affirmed an
Appellate Division order upholding the denial of a motion to
suppress cocaine recovered after a traffic stop based upon car
windows that were over-tinted under Vehicle and Traffic Law § 375
(12-a) (b) but permissible in Georgia, the state in which the
vehicle was registered (10 NY3d at 946, affg 48 AD3d 1283, 1284-
1285 [2008]).[3]  The Fourth Department concluded that suppression

_____

    [3]  Vehicle and Traffic Law § 250 (1) provides an exemption
from its requirements for nonresident vehicle owners whose

of the drugs found as a result of the traffic stop was not warranted because, among other things, "it is unreasonable to require that police officers be familiar with the equipment requirement laws of every state, and presumably other countries, in order to effectuate a proper stop for a violation of New York State law" (Estrella, 48 AD3d at 1285).  Two dissenting Justices would have reversed on the ground that the officer who stopped the vehicle made a mistake of law and, therefore, lacked probable cause to believe that defendant had committed a traffic infraction.  The dissenters reasoned that a "mistake of law, as opposed to a mistake of fact, cannot justify the stop of a vehicle and the ensuing search and subsequent seizure of evidence therefrom," and that "police officers must be charged with the objective standard of knowing whether [a traffic] infraction occurred" (id. at 1287).

On appeal, we affirmed, rejecting the rationale of the dissenting Justices.  Without drawing any distinction between mistakes of fact and mistakes of law in the context of traffic stops, we determined that "[t]he record supports the finding that the officer who stopped the car reasonably believed the windows to be over-tinted in violation of [the] Vehicle and Traffic Law" (Estrella, 10 NY3d at 946 [emphasis added]).  We concluded that the officer was not chargeable with knowledge that the window

---

vehicles are in compliance with the registration and equipment requirements of the nonresident's home state, so long as the state grants "like exemptions" to New York residents.

tinting was legal in Georgia (see id.).

                              III


        So too here, we look to the reasonableness of the
officer's belief that defendant violated the Vehicle and Traffic
Law, without drawing any distinction between mistakes of fact and
mistakes of law.  In Estrella, the arresting officer would have
been expected to know that Vehicle and Traffic Law § 250 (1)
provides an exemption from this state's registration and
equipment requirements for out-of-state vehicles that comply with
the requirements of the state in which they are registered.  We
concluded, however, that because the officer was not chargeable
with knowledge of the legal registration and equipment
requirements of Georgia, the stop was justified based upon the
officer's reasonable belief that the defendant had violated the
Vehicle and Traffic Law (Estrella, 10 NY3d at 946).  Similarly
here, we are not saying that it would have been objectively
reasonable for the arresting officer to have claimed ignorance of
the requirement in Vehicle and Traffic Law § 1100 (b) that a stop
sign in a parking lot be registered to be valid.  We are saying
that the stop was nonetheless constitutionally justified because
the officer was not chargeable with knowing each and every stop
sign that was registered under the Newark Village Code.

        We note that defendant and the dissent rely upon a

string of Appellate Division cases holding that, "[w]here the officer's belief is based on an erroneous interpretation of law, the stop is illegal at the outset and any further actions by the police as a direct result of the [traffic] stop are illegal" (Matter of Byer v Jackson, 241 AD2d 943, 944-945 [4th Dept 1997]; see People v Rose, 67 AD3d 1447, 1449 [4th Dept 2009]; People v Smith, 67 AD3d 1392, 1392 [4th Dept 2009]; see also People v Allen, 90 AD3d 1082, 1084 [3d Dept 2011]; People v MacKenzie, 61 AD3d 703, 703 [2d Dept 2009], lv denied 13 NY3d 798 [2009]; People v Jean-Pierre, 47 AD3d 445, 445 [1st Dept 2008], lv denied 10 NY3d 865 [2008]). The dissent maintains that, given these Appellate Division cases, Estrella could not have been intended to "eliminate[]" the mistake of law/mistake of fact distinction (Dissent Op at 12). That distinction, however, was never as well-established as the dissent would have it. Despite the evident consensus among the Appellate Division Departments that a mistake of law cannot justify a traffic stop, this Court has never distinguished between mistakes of law and mistakes of fact in considering the reasonableness of a traffic stop and the decision in Estrella is consistent with that fact.

Our decision in People v Gonzalez is not to the contrary. The holding in that case -- that a "mistaken belief as to the law, no matter how reasonable, is not sufficient" to establish a constitutionally valid search and seizure (People v Gonzalez, 88 NY2d 289, 295 [1996] [internal quotation marks and

citations omitted]) -- was limited to the context of the apparent authority doctrine.  We held that "the apparent authority of a third party to consent to a search of a suspect's personal effects must rest upon the police officer's reasonably held factual interpretation of the circumstances; it cannot be based on a mistaken view of the law" (id.).  Our conclusion was based almost entirely upon the then "consistent reading of [Illinois v Rodriguez (497 US 177, 179 [1990])] by the [f]ederal courts" applying the apparent authority doctrine (Gonzalez, 88 NY2d at 295); we did not hold that our State Constitution provides greater protection than the Federal Constitution in the apparent authority context, or indicate in any way that article I, § 12 of the State Constitution does not tolerate reasonable mistakes of law.

We, therefore, reject defendant's argument and the contention of the dissent that the distinction between mistakes of fact and mistakes of law set forth in Gonzalez should be expanded to the context of determining whether probable cause exists for a traffic stop.  Such an expansion would constitute a departure from Heien and, in our view, "[n]one of the reasons for extending [the] protections of our Constitution beyond those given by the Federal Constitution exist here" (Robinson, 97 NY2d at 351).  This Court has adopted separate state constitutional standards "when doing so best promotes predictability and precision in judicial review of search and seizure cases and the

protection of the individual rights of our citizens" (People v
P.J. Video, 68 NY2d 296, 304 [1986], cert denied 479 US 1091
[1987] [internal quotation marks and citations omitted]; see
People v Weaver, 12 NY3d 433, 445 [2009]).  We have also
deviated, based on our state constitutional standards, from
Supreme Court decisions that undermine our ability to "provide
and maintain 'bright line' rules to guide the decisions of law
enforcement and judicial personnel who must understand and
implement our decisions in their day-to-day operations in the
field" (P.J. Video, 68 NY2d at 305).  More fundamentally, while
we have declined to adopt an "ironclad [methodology] to be
rigidly applied" in determining whether separate standards are
warranted, we have recognized "that we act []properly in
discharging our responsibility to support the State Constitution
when we examine whether we should follow . . . as a matter of
State law" any recent decision of the Supreme Court that marks a
"change[ in] course and dilut[ion of] constitutional principles"
or protections previously enjoyed by the citizens of this State
(People v Scott, 79 NY2d 474, 504 [1992] [Kaye, J. concurring]).

In Heien, the Supreme Court did not change course;
rather, the Court relied on its "cases dating back two centuries
[that] support treating legal and factual errors alike in this
context" (135 S Ct at 536-537).  Nor does Heien represent a
dilution of our "State . . . common law defining the scope of the
individual right in question" (P.J. Video, 68 NY2d at 303) or "an

enormous unsupervised intrusion by the police . . . upon personal privacy" (Weaver, 12 NY3d at 445).  As explained above, this Court has never held that a reasonable mistake of law cannot provide justification for a traffic stop and, even in the context of cases involving the apparent authority of a third party to consent to a search, our conclusion that a mistake of law could not establish a constitutionally valid search or seizure was based upon federal law, not state constitutional or common law (see Gonzalez, 88 NY2d at 295-296).  What we have held is that an officer's objectively "reasonabl[e] belie[f]" that he or she has witnessed a violation of the Vehicle and Traffic Law justifies a traffic stop, even when the officer made a mistake of law (Estrella, 10 NY3d at 946).[4]

Moreover, the purportedly "bright line rule" adopted by the Appellate Division Departments that mistakes of law can never provide the basis for a traffic stop has not promoted precision and predictability.  To the contrary, the rule has proven difficult to apply as evidenced by the discussion in (People v Abdul-Akim, 27 Misc 3d 1220[A], 2010 NY Slip Op 50814[U], *9 [Sup Ct, Kings County 2010]), in which the trial court discussed cases

_____

[4]  The dissent implicitly concedes that the mistake in People v Estrella (10 NY3d 945 [2008], cert denied 555 US 1032 [2008]) was one of law -- stating that Estrella is "more properly understood to limit the laws for which an officer is responsible" (Dissent Op at 13), i.e., by positing that mistakes as to the law of other states are reasonable, the dissent essentially argues that Estrella should be understood as limiting which mistakes of law this Court is willing to recognize as objectively reasonable.

either ignoring or attempting to employ the distinction and observed, "it [is] not always . . . easy to classify a particular mistake as one of law or fact."[5]  While the dissent posits that we should apply a rule that a stop based upon a mistake of law is constitutionally invalid "because [then] there would be no need to determine the objective reasonableness of the officer's mistake of the law" (Dissent Op at 7), this Court has already demonstrated that we have no trouble making that determination when called upon to do so (see Estrella, 10 NY3d at 946). Contrary to the dissent's concerns that our refusal to expand the mistake of fact/mistake of law distinction to the context of traffic stops provides a disincentive for police officers to know the law (Dissent Op at 7-8), a rule that even objectively reasonable mistakes of law cannot provide a basis for a traffic stop would do little to protect the rights of the accused or

---

[5]  Indeed, in the case before us, the mistake of the officer as to whether the stop sign was justified under the Vehicle and Traffic Law could be characterized as a mistake of fact or of law -- even if the officer knew of the legal requirement that stop signs in a parking lot must be formally registered to be valid, but was mistaken about whether this particular stop sign was on the list of registered signs.  That said, while we do not know what the officer actually believed because the parties' stipulation did not contain that information, we are ultimately concerned, not with the officer's subjective belief, but with whether there is an "objective safeguard[] circumscribing the exercise of police discretion" (People v Robinson, 97 NY2d 341, 351 [2001] [internal quotation marks and citation omitted]). Here, the requirement that a mistake be objectively reasonable provides that safeguard (see Heien v North Carolina, ___ US ___, ___, 135 S Ct 530, 539-540 [2014]).

encourage officers to better learn the law (see generally
Robinson, 97 NY2d at 351). As the Supreme Court explained, the
requirement that the mistake be objectively reasonable prevents
officers from "gain[ing any] Fourth Amendment advantage through a
sloppy study of the laws [they are] duty-bound to enforce"
(Heien, 135 S Ct at 539-540).

Finally, there is no unfairness in forgiving a police
officer's objectively reasonable mistake of law while refusing to
allow an individual to "escape criminal liability based on a
mistaken understanding of the law" (Heien, 135 S Ct at 540).
Neither the Supreme Court nor this Court have held that "the
government can[] impose criminal liability based on a mistaken
understanding of the law;" rather, "just because mistakes of law
cannot justify either the imposition or the avoidance of criminal
liability, it does not follow that they cannot justify an
investigatory stop" (id.).

IV

Applying Heien and our decision in Estrella here, we
conclude that the traffic stop was justified under both the
Fourth Amendment and article I, § 12 based on the officer's
reasonable belief that defendant failed to stop at a valid stop
sign. It is undisputed that the stop sign was of regulation
color, height and dimension; its only defect was that it was not
properly registered. Under Vehicle and Traffic Law § 1110 (c),
there is a presumption that "official traffic-control devices

[that] are placed in position approximately conforming to the requirements of this chapter . . . have been so placed by the official act or direction of lawful authority, unless the contrary shall be established by competent evidence."  Although the stop sign here was ultimately established to be unregistered, the presumption is indicative of the Legislature's intent that traffic control devices appearing to be proper be assumed valid, absent proof to the contrary.  In our view, "[t]he officer was not chargeable with knowledge that the" stop sign at issue was not registered under Newark Village Code § 140-46, which lists 130 registered stop signs in the Village (Estrella, 10 NY3d at 946).  Nor was he required to verify that the stop sign was valid before making the traffic stop -- rather, the stop was based on probable cause because the officer reasonably believed that he had observed defendant violate the Vehicle and Traffic Law.  Although the stop sign was not registered and, therefore, defendant did not violate Vehicle and Traffic Law § 1172(a), the evidence recovered as a result of the traffic stop need not be suppressed.

Accordingly, the order of County Court should be reversed, defendant's motion to suppress denied, and the case remitted to Village Court for further proceedings in accordance with this opinion.

People v Rebecca Guthrie

No. 50


RIVERA, J.(dissenting):

        The courts of this state have consistently held that a police officer's mistake of law cannot provide the requisite probable cause for a valid search and seizure.  It is also well-established that evidence obtained as a result of a seizure lacking probable cause must be suppressed.  Given this legal landscape, I disagree with the majority's conclusion that under our state constitution an officer's erroneous belief that a driver violated the law may provide probable cause for a vehicular stop, and, regardless of the driver's innocence, a court may admit evidence obtained as a consequence of the officer's mistake.  Therefore, I dissent.


                                I.

        A vehicular stop is valid under New York State's constitution when "a police officer has probable cause to believe that the driver of an automobile has committed a traffic violation" (Robinson, 97 NY2d 341, 349 [2001]; see NY Const, Art I, § 12).  As the majority correctly states, the legal validity of the stop depends on whether the officer's belief that the defendant violated the Vehicle and Traffic Law is objectively

                              - 1 -

reasonable (Maj Op at 5).  However, what is objectively
reasonable depends on what the officer knew at the time of the
stop (see People v William ""II'', 98 NY2d 93, 98 [2002]; People
v Banks, 85 NY2d 558, 562 [1995]; People v Cantor, 36 NY2d 106,
112 [1975]).

        In order to make a determination as to the lawfulness
of a driver's actions under the VTL, it is axiomatic that an
officer must know the mandates and prescriptions set forth in
that law (People v Robinson, 97 NY2d at 351 ["the [VTL] provides
an objective grid upon which to measure probable cause" for
making a traffic stop]).  While an officer must know the rules of
the road in order to properly enforce the law, it is also the
reality of police work that an officer acts based on facts which
cannot be known in advance, and which unfold in the moments
leading up to the stop.  Thus, while an officer's appreciation of
the facts depends on what develops in the field, an officer's
knowledge of the law's requirements is set without reference to
those facts.  Although an officer must determine if the facts as
observed constitute a violation of the law, the law remains as
written.

        Given the legal mandates of the VTL and the dynamics of
police work in this area, where an officer acts on a mistaken
perception of the circumstances leading to a vehicular stop,
courts must determine whether such mistake is excusable, and
whether the error may supply the requisite probable cause to

justify police action.  As a general matter, courts in New York
have distinguished between mistakes of fact and law, and applied
that distinction to traffic stops (see People v Rose, 67 AD3d
1447, 1449 [4th Dept 2010] [stop of defendant's vehicle could not
be justified by officer's mistaken belief that defendant violated
the VTL by flashing high beams]; McDonell v New York State Dept.
of Motor Vehicles, 77 AD3d 1379, 1380 [4th Dept 2010] [State
Trooper's mistaken belief that fishtailing violated VTL § 1162,
which prohibits unsafely moving a stopped, standing, or parked
vehicle unless doing so can be done with reasonable safety, could
not justify stop of defendant's vehicle]; People v MacKenzie, 61
AD3d 703, 703 [2d Dept 2009], lv denied 13 NY3d 798 [2009]
[police officer's observation that defendant was driving without
headlights on, fifteen minutes after sunset, could not provide
the officer with probable cause to make a traffic stop where
statute provided that headlights are not generally required until
thirty minutes after sunset]; People v Jean-Pierre, 47 AD3d 445,
445 [1st Dept 2008], lv denied 10 NY3d 865 [2008] [stating in
dictum that "'A mistake of fact, but not a mistake of law, may be
used to justify a search and seizure'"]; People v Smith, 1 AD3d
965, 965-66 [4th Dept 2003] [officer's stop of defendant's
vehicle was unlawful because it was premised on the mistaken
belief that the vehicle required front license plates]; Byer v
Jackson, 241 AD2d 943, 944-945 [4th Dept 1997] [officer's stop of
defendant was illegal because it was predicated on the erroneous

belief that defendant's failure to use a turn signal when turning out of a parking lot violated the VTL]; see also People v Allen, 90 AD3d 1082, 1084 [3d Dept 2011] [stating in dicta that "reasonable suspicion cannot be based on a mistake of law"]; People v Baez, 131 Misc 2d 689 [Sup Ct 1986] [stop invalid where police officer mistakenly believed that it was illegal for defendant to have affixed defendant's license plate by wiring and not bolts]).

In these cases the courts have concluded that the officer's reasonable mistake of fact, measured by the circumstances faced by the officer at the time of the stop, may support a finding of probable cause. Meaning that a stop will be treated as lawful, so long as the officer objectively, reasonably believes that the facts justify the stop, even though the actual facts fail to establish the driver's violation of the VTL. The courts have not been so forgiving of a mistake of law, and have concluded that such mistake can never justify a stop. (See Allen, 90 AD3d at 1082; Rose, 67 AD3d at 1449; McDonell, 77 AD3d at 1380; MacKenzie, 61 AD3d at 703; Jean-Pierre, 47 AD3d at 445; Smith, 1 AD3d at 965-66; Byer, 241 AD2d at 944-945; Baez, 131 Misc2d at 689).

The distinction is wholly logical and serves the state's interests in protecting individual rights and ensuring uniform application of the law. Society relies on police officers to enforce laws based on what the laws say, not on an

officer's mistaken belief.  Excusing an officer's mistake of law removes an incentive to learning the law.  While the realities of police work rightly justify tolerance of an officer's mistake of fact, there is no similar basis to accept or excuse an officer's error regarding what the law permits and forbids.

II.

This Court is now presented directly with the question whether, as a state constitutional matter, an officer's mistake of law may provide a basis for probable cause to justify a vehicular stop.  The majority concludes that our State Constitution provides no greater protection in this area than the Federal Constitution, as articulated in Heien v North Carolina (135 S Ct 530, 534 [2014]), which held that a mistake of law may provide reasonable suspicion to justify a seizure under the Fourth Amendment.  However, Heien is not dispositive of our state constitutional analysis.

In the area of search and seizure law, this Court has not hesitated in diverging from the federal approach where a narrow construction of constitutional guarantees would ill-serve our state interests (see Stewart F. Hancock, Jr., New York State Constitutional Law-Today Unquestionably Accepted and Applied As A Vital and Essential Part of New York Jurisprudence, 77 Alb L Rev 1331, 1346 [2014] [according to former New York Court of Appeals Judge Hancock, Jr., "state constitutionalism ... is routinely

applied to resolv(e) issues of fundamental rights in New York.
State constitutional law -- and especially its reestablished
legitimacy and unhesitating use by judges at all levels of the
New York judiciary -- have helped make the New York judicial
system the leading and, in my opinion, the best in the nation"]).
For example, we have interpreted our State Constitution more
expansively than the Federal Constitution in a way that "best
promotes 'predictability and precision in judicial review of
search and seizure cases and the protection of the individual
rights of our citizens'" (People v P.J. Video, 68 NY2d 296, 304
[1986]; see also People v Scott, 79 NY2d 474, 478 [declining to
adopt Supreme Court's holding that areas outside a home's
curtilage enjoy no Fourth Amendment protection]; People v Harris,
77 NY2d 434, 438 [1991] [State Constitution requires suppression
of statements obtained after Payton violation in absence of
attenuation, even where statements would not have been suppressed
under Federal Constitution]; People v Bigelow, 66 NY2d 417, 426-
427 [1988] [rejecting good-faith exception to the warrant
requirement]; Hancock, Jr., 77 Alb L Rev at 1332 ["when a New
York court concludes that an individual has rights that are not
protected under the [F]ederal Constitution, but should be under
the New York Constitution, the court will afford that person the
greater protection as a matter of state constitutional law. It is
simply a matter of fairness and common sense"]; NY Const, Art I,
§ 12).  The Court has also sought to adopt "'bright line' rules

in this area to guide the decisions of law enforcement and judicial personnel who must understand and implement our decisions in their day-to-day operations" (P.J. Video, 68 NY2d at 305). Even where the United State Supreme Court has not spoken, this Court has read our State Constitution to prevent "enormous unsupervised intrusion by the police ... upon personal privacy," notwithstanding a possible future federal determination to the contrary (People v Weaver, 12 NY3d 433, 445 [2009]).

In light of our prior broad interpretation of our state constitution, the uniformity of New York case law that has rejected consideration of a mistake of law as part of the probable cause analysis, and because a "violation of a statute [] triggers the officer's authority to make the stop and limits the officer's discretion" (Robinson, 97 NY2d at 355), I would find that a stop based on a police officer's mistake of law violates our State's Constitution under article I, § 12. The rule has the benefit of promoting precision and predictability in judicial review because there would be no need to determine the objective reasonableness of the officer's mistake of the law. All that would need to be considered is what the law says. Thus, providing a bright line rule easily followed by the courts and law enforcement, and ensuring the protection of individual rights.

Such a defined rule would incentivize police to know the law; for why would an officer risk a mistake that would

result in a judicial determination that the stop was unlawful at its inception?[1]  Moreover, if civilians are required to know the law, I see no reason for expecting less from those charged with enforcing it.  There is a "fundamental unfairness of holding citizens to 'the traditional rule that ignorance of the law is no excuse,' while allowing those 'entrusted to enforce' the law to be ignorant of it" (United States v Chanthasouxat, 342 F3d 1271, 1280 [11th Cir 2003], citing Bryan v United States, 524 US 184, 196 [1998]).  Certainly the police have labored under this approach without significant damage to public security and safety (see Heien, 135 S Ct at 544 [Sotomayor, J., dissenting] [noting there was "no indication that excluding an officer's mistake of law from the reasonableness inquiry has created a problem for law enforcement in the overwhelming number of Circuits which have adopted that approach"]).  Since police are entrusted with authority to safeguard all members of our society, we should not adopt a rule that rewards an error concerning the legitimacy of the officer's exercise of such power.

---

[1] The majority posits that excluding mistakes of law from the probable cause analysis "will do little to protect the rights of the accused or encourage officers to better learn the law" (Maj Op at 14).  This argument relies on the majority's underlying flawed premise that objectively reasonable mistakes of law involve only complex matters which officers simply should not be expected to learn.  Of course those are exactly the types of mistakes that we should incentivize officers to avoid by excluding evidence obtained as a result of such error.  Moreover, if a law is simply too difficult for an officer to understand or learn, why should we expect those without legal training to fare any better?

I also find no basis for the majority's conclusion that the rule against mistakes of law fails to promote precision and predictability simply on the majority's assumption that "it [is] not always easy to classify a particular mistake as one of law or fact" (Maj Op at 11, citing People v Abdul-Akim, 27 Misc 3d 1220[A], 2010 NY Slip Op 50814[U], *9 [Sup Ct, Kings County 2010]). Nothing suggests that courts have had difficulty, as a general matter, in categorizing an officer's mistake as one that turns on a misunderstanding of the law, or on incorrect facts. Courts are regularly called upon to determine legal matters and there is no reason to think that courts will be any less able to do so in an area that had been well-settled until today.

While the majority asserts, by way of example, that the mistake at issue in this appeal could be of fact or law, (Maj Op at 11 n 3), this case actually illustrates why there is no problem, of a constitutional dimension, in distinguishing between the two. First, both lower courts easily concluded that defendant's case involves a question of law, undermining any suggestion that this was a particularly challenging decision. Second, if there is any lack of clarity here it is not due to the inherent difficulty of distinguishing a mistake of law from fact, but to the parties' stipulation, which in this case failed to address what the officer believed. In other words, if we do not know whether he knew the legal requirements of the VTL that is only because we lack information readily available from the

officer, not because there is a problem with the rule.

If the decision today were limited to the validity of the stop alone, it might not be so troubling, but that is not the case. The majority concludes that the evidence obtained as a direct consequence of the stop is admissible against the defendant (Maj Op at 13). In so doing the majority has limited the reach of this Court's prior holding in People v Bigelow, which rejected, on state constitutional grounds, a good faith exception to the exclusionary rule which the United States Supreme Court had previously adopted (Bigelow, 66 NY2d at 426-427, citing United States v Leon, 468 US 897 [1984]). The Bigelow Court reasoned that "if the People are permitted to use the seized evidence, the exclusionary rule's purpose is completely frustrated, a premium is placed on the illegal police action and a positive incentive is provided to others to engage in similar lawless acts in the future" (id. at 427). This analysis applies with equal force to an officer's mistake of law, and provides an additional reason to reject such mistake as a viable consideration in determining the existence of probable cause in support of the admission of unlawfully obtained evidence (see United States v Lopez-Soto, 205 F3d 1101, 1106 [excusing an officer's reasonable mistake of the law would "defeat the purpose of the exclusionary rule, for it would remove the incentive for police to make certain that they properly understand the law that they are entrusted to enforce and obey"] [internal citation

omitted]).[2]

## III.

The majority relies on People v Estrella (10 NY3d 945 [2008], cert denied 555 US 1032 [2008]) for its argument that we have previously rejected the distinction between mistakes of law and fact, seemingly suggesting it does not break new ground in defendant's case.  In my opinion, the majority attaches an overly generous significance to Estrella, and ignores the main distinction between that case and this appeal.

In Estrella, police stopped a vehicle with Georgia license plates believing that its windows were excessively tinted in violation of VTL § 375 (12-a) (b) (4) (People v Estrella, 48 AD3d 1283, 1285 [4th Dept 2008]).  As it turned out the police were incorrect because the tinting was subject to VTL § 250 (1).  That section excludes from New York's registration and equipment requirements certain nonresident owners of out-of-state vehicles

---

[2] The majority contends that the admission of evidence resulting from a mistake of law does not limit Bigelow because if the mistake fails the objectively reasonable test, the evidence will be suppressed (Maj Op at 5 n 2).  However, that reading of Bigelow ignores the overarching concern that underlies the decision, namely that we should adopt rules that deter police misconduct.  Moreover, the majority ignores the intersection of good faith and objectively reasonable mistakes of law.  Under Bigelow, evidence obtained by an officer who acts mistakenly, but in good faith, is inadmissible, regardless of the objectively reasonable character of the officer's mistake.  In contrast, under the majority's approach, evidence is admissible if the officer acts in good faith and the mistake is deemed objectively reasonable.

that are in compliance with corresponding requirements of the state in which the owner resides (id.).  The Appellate Division concluded that the officer had probable cause to stop the driver, and Supreme Court properly denied the defendant's request to suppress the evidence seized from the vehicle as a result of the stop (id.).

This Court affirmed in a cursory, five sentence memorandum opinion.  The majority here contends that the Court in Estrella based its decision on the officer's reasonable belief, without distinguishing between mistakes of law and fact (Maj Op at 7).  The majority reaches this conclusion based on the Estrella Court's statement that "[t]he officer was not chargeable with knowledge that the tinting was legal in Georgia, where the car was registered" (Estrella, 10 NY3d at 946).  Such a sweeping interpretation of Estrella, however, cannot be read into this one sentence.

Certainly, no Appellate Division interpreted this Court's memorandum decision in Estrella to have eliminated the well established distinction between mistake of law and fact.  Post - Estrella, all the Appellate Departments, including the Fourth Department, continued to apply this distinction (see e.g. Rose, 67 AD3d at 1447; McDonell, 77 AD3d at 1380; MacKenzie, 61 AD3d at 703).

Moreover, because at the time this Court affirmed the Fourth Department in Estrella, the lower courts consistently

applied the mistake of law/mistake of fact distinction, if this Court had intended to upset the approach in this State, it most certainly would have done so in an opinion that fully articulated the grounding for its decision (see People v Jones, 24 NY3d 623 [2014] [noting that the Court was departing with its previous case law and explaining the grounds for that departure]; People v Damiano, 87 NY2d 477, 489 [1996] [long-settled rules open to reexamination where "some evidence that the police concerns underlying them are outdated or if they have proved unworkable"]; People v Bing, 76 NY2d 331, 338 [1990] [recognizing Court's obligation to justify a significant departure from its prior case law]). Instead, the Court issued an opinion devoid of citations to any law, in support of what most certainly would have been considered a deviation from New York's longstanding approach.

In my opinion, Estrella is more properly understood to limit the laws for which an officer is responsible -- "chargeable with knowledge" in the words of the Estrella Court -- to those of the State of New York. That is a suitable place to draw the line regarding the legal knowledge expected of an officer.[3] Otherwise, it would place undue demands on a police officer to

---

[3] The majority incorrectly characterizes my argument about Estrella as concerning "which mistakes of law" are objectively reasonable (Maj Op 12 n 4). Unlike the majority, I believe Estrella focused on the more general and rational point that New York officers should be expected to know New York law. Whether a mistake concerning a foreign jurisdiction's law is objectively reasonable is besides the point.

have to be familiar with the laws of every other jurisdiction, when those laws relate to the minutia of technical requirements imposed on an automobile.  Automobile window tinting in <u>Estrella</u> is but one example.

The same cannot be said for a New York officer's understanding of New York law.  We expect an officer to know the law of this state with precision because that law is the source of the officer's authority.  We should not excuse an error about the basic foundation of an officer's power, or discourage better comprehension of it.  Moreover, if, as the majority concludes, we cannot depend on an officer charged with enforcement powers to know the law, we place in question the integrity of our criminal justice system.  That strikes me as an unacceptable outcome of the majority's approach.

IV.

Here, defendant did not violate the VTL.  Therefore, I dissent because under the State constitution, the officer had no probable cause to stop her vehicle, and the courts below properly suppressed evidence obtained pursuant to the stop.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order reversed, defendant's motion to suppress denied and case remitted to Village Court, Village of Newark, for further proceedings in accordance with the opinion herein.  Opinion by Judge Stein.  Chief Judge Lippman and Judges Read, Pigott, Abdus-Salaam and Fahey concur.  Judge Rivera dissents in an opinion.

Decided April 7, 2015