OPINION OF THE COURT
Jonah Triebwasser, J.
Procedural History
A probable cause/suppression hearing was held on April 8, 2015. At the close of the suppression hearing, it was agreed that defendant would have until April 17, 2015 to submit a post-hearing brief, which he did on April 11, 2015. It was agreed that the People would have until April 30, 2015 to submit a response. No such response has been forthcoming. The matter was marked fully submitted on April 30, 2015.
Legality of the Stop
At the suppression hearing, Officer Travis Sterritt of the Red Hook Police testified that he stopped defendant’s motor vehicle on February 1, 2015 at approximately 5:50 p.m. because of a broken taillight showing “white light to the rear.” As a result of that stop, the officer approached defendant’s vehicle and observed that defendant’s eyes were red and glassy. The officer also detected the odor of alcohol emanating from the defendant’s mouth. The officer went on to testify that defendant subsequently failed some of the standard field sobriety tests and that the initial breath test (commonly known as the AlcoSensor) registered the presence of alcohol on defendant’s breath.
Defendant contends that the initial stop for the broken taillight was improper and that, therefore, the officer lacked probable cause for the stop and that, furthermore, all evidence and observations made as a result of the stop must be suppressed and the charges dismissed.
The section charged by the officer as the predicate for the stop, Vehicle and Traffic Law § 375 (2) (a) (3), requires:
“Every motor vehicle except a motorcycle, driven *788 upon a public highway during the period from one-half hour after sunset to one-half hour before sunrise or at any other time when windshield wipers are in use, as a result of rain, sleet, snow, hail or other unfavorable atmospheric condition, and at such other times as visibility for a distance of one thousand feet ahead of such motor vehicle is not clear, shall display:
"... if manufactured on or after January first, nineteen hundred fifty-two, at least two lighted lamps on the rear, one on each side, which lamps shall display a red light visible from the rear for a distance of at least one thousand feet” (emphasis added).
This requirement has been interpreted in People v Allen (90 AD3d 1082 [3d Dept 2011]) to be that the taillights must display all red lights and not a mixture of red and white.
Officer Sterritt testified that the taillight on the passenger side was emitting a white light. Under the Allen test, and the plain language of the section charged, the defendant’s car was apparently in violation of Vehicle and Traffic Law § 375 (2) (a) (3). Therefore, there was probable cause to stop defendant’s car. (People v Robinson, 97 NY2d 341 [2001].)
Defendant’s reliance upon Allen for the proposition that the white light emitted must be a “bright” white light is misplaced. The Allen court did speak of the light the deputy saw in that case as being “bright,” but did not lay down a requirement that anything less than a “bright” white light would fail to be a violation of Vehicle and Traffic Law § 375 (2) (a) (3). This court’s reading of Allen supports the proposition that any white light seen emanating from the taillights of a car is sufficient for a conviction.
Similarly, defendant’s reliance on Vehicle and Traffic Law § 375 (2) (b) for the proposition that the white light seen by the officer had to be “dazzling” to constitute a violation of Vehicle and Traffic Law § 375 (2) (a) (3) is also misplaced. Vehicle and Traffic Law § 375 (2) (b) states, in part, that “[a]ll lamps used on a motor vehicle except a motorcycle shall be so arranged, adjusted and operated, as to avoid dangerous glare or dazzle.”
A fair reading of this section does not mandate that a white light emanating from a taillight must be “dazzling” to be a violation of Vehicle and Traffic Law § 375 (2) (a) (3). The violation occurs once any mixture of red and white light is detected. (See generally Allen.)
*789 Was there probable cause to arrest the defendant?
Defendant contends that the officer did not have sufficient probable cause to arrest defendant for driving while intoxicated. The officer testified that, after the traffic stop, he observed defendant’s eyes were glassy and bloodshot, that an odor of alcohol emanated from defendant’s mouth, that defendant failed some of the field sobriety tests, and that the defendant’s breath registered positive for the presence of alcohol on the preliminary breath test device.
Defendant further contends that there was no testimony that the preliminary breath test device was properly calibrated, nor that defendant was observed for the appropriate amount of time (15 minutes) to assure that he did not consume alcohol or regurgitate alcohol. However, even if we set aside the result of the preliminary breath test because of these alleged deficiencies, the other indices of intoxication (glassy and bloodshot eyes, the smell of alcohol on defendant’s breath) were adequate probable cause on their own to detain defendant.
A finding of probable cause does not require the same quantum of proof necessary to sustain a conviction, or to establish a prima facie case. Rather, it need merely appear more probable than not that a crime has taken place and that the one arrested is the perpetrator. (People v Hill, 146 AD2d 823, 824 [3d Dept 1989]; see People v Attebery, 223 AD2d 714, 715 [2d Dept 1996].) Moreover, in determining whether a police officer has probable cause for an arrest, the emphasis should not be narrowly focused on any single factor, but on an evaluation of the totality of circumstances, which takes into account the “realities of everyday life unfolding before a trained officer who has to confront, on a daily basis, similar incidents.” (People v Wright, 8 AD3d 304, 306-307 [2d Dept 2004]; People v Bothwell, 261 AD2d 232, 234 [1st Dept 1999], quoting People v Graham, 211 AD2d 55, 58-59 [1st Dept 1995].)
Similarly, in People v Leary (18 Misc 3d 1107[A], 2007 NY Slip Op 52464[U] [Hyde Park Just Ct 2007]), the court quoted with favor People v Farrell (89 AD2d 987 [2d Dept 1982]), wherein the Appellate Division, Second Department articulated the reasonable cause standard as it applies to drinking and driving offenses. The inquiry is “whether, viewing the facts and circumstances as they appeared at the time of arrest, a reasonable person in the position of the officer could have concluded that the motorist had operated the vehicle while under the influence of intoxicating liquor.” (89 AD2d at 988 [2d Dept *790 1982].) In People v McCarthy (135 AD2d 1113 [4th Dept 1987]), probable cause was established where the defendant’s eyes were bloodshot, his speech slurred, and there was a strong odor of alcohol coming from the car.
Defendant’s girlfriend, Dr. Katie Clark, a veterinarian, testified that she observed the defendant some 25 to 40 minutes after Officer Sterritt’s observations, and failed to see any obvious signs of intoxication. It is a matter of common knowledge that, as time passes, people sober up. It is within the realm of possibility that defendant did sober up to some extent in the 25 to 40 minutes which passed to account for Dr. Clark’s observations. Such a divergence of observations between Officer Sterritt and Dr. Clark are suitable for exploration at a trial but are not dispositive at a suppression hearing. As stated by the US Supreme Court:
“The right to confrontation is basically a trial right. It includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness. A preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial, simply because its function is the more limited one of determining whether probable cause exists to hold the accused for trial.” (Barber v Page, 390 US 719, 725 [1968].)
The same can be said for the divergence of testimony between Officer Sterritt and Dr. Clark as to whether or not the taillights were showing a mixture of red and white light when she arrived some 25 to 40 minutes after the arrest.
Dr. Clark also testified that, two days after the arrest, she took photographs and video of the rear of defendant’s car to show that no white light emanated from the taillights. Again, the possibility that repairs were or were not made between the time of the arrest and the date and time of the taking of the photos and video is a matter for trial rather than for a suppression hearing.
For all of the reasons set forth, supra, defendant’s motion is denied in toto.