This opinion is uncorrected and subject to revision before
publication in the New York Reports.
-----------------------------------------------------------------
No. 219
The People &c.,
          Respondent,
       v.
Clifford Jones,
          Appellant.

Heather K. Suchorsky, for appellant.
David M. Cohn, for respondent.
The Innocence Project, amicus curiae.

PIGOTT, J.:

          Defendant sought an evidentiary hearing as part of his

postjudgment motion to vacate his conviction on the ground that

newly discovered evidence in the form of mitochondrial DNA

- 1 -

(mtDNA) testing excluded him as the perpetrator of crimes of which he was convicted in 1981 (see CPL 440.10 [1] [g]).  Supreme Court and the Appellate Division, in the exercise of their discretion, summarily denied defendant's motion.  The jurisprudence of this Court, for nearly 40 years, has been that "[t]he power to review a discretionary order denying a motion to vacate judgment upon the ground of newly discovered evidence [brought pursuant to CPL 440.10 (1) (g)] ceases at the Appellate Division" (People v Crimmins, 38 NY2d 407, 409 [1975]), leaving this Court without the power to consider whether such summary denials constituted an abuse of discretion.  Because the rule enunciated in Crimmins has needlessly restricted this Court's power of review concerning CPL 440.10 (1) (g) motions, we now overrule that part of the Crimmins decision, hold that the Appellate Division abused its discretion in summarily denying defendant's motion for an evidentiary hearing in this case, and remand it to Supreme Court for further proceedings consistent with this opinion.

I.

Newly discovered evidence is one of the bases under CPL 440.10 (1) that defendants may allege when seeking postjudgment relief (see CPL 440.10 [1] [a]-[i]).  When it became law in 1971, CPL § 440.10 was designed to replace the common law contentions previously raised through a motion for a writ of error coram nobis and post-conviction applications for a new trial based on

newly discovered evidence (see Richard G. Denzer, Practice
Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 440.10 at
183 [1971 ed]; see also Peter Preiser, Practice Commentaries,
McKinney's Cons Laws of NY, Book 11A, CPL 440.10 at 248 [stating
that "resort to coram nobis is unavailable in situations covered
by the statute"]).  Prior to the statute's enactment, however,
this Court declined to review postjudgment arguments that the
Appellate Division abused its discretion in denying a defendant's
motion for a new trial based on newly discovered evidence,
holding that "[t]he right to review of such an order [in a
noncapital case] ceases at the Appellate Division" (People v
Fein, 18 NY2d 162, 169 [1966], cert denied 385 US 649 [1967], reh
denied 386 US 978 [1967] [citations omitted]; see People v
Mistretta, 7 NY2d 843, 844 [1959]; People v Girardi, 303 NY 887
[1952]; People v Luciano, 275 NY 547, 548 [1937], cert denied 305
US 620 [1938] [striking from the record all proceedings upon the
motion for a new trial based on newly discovered evidence on the
ground that this Court lacked the power to review the
discretionary order in noncapital cases]; People v Bonifacio, 190
NY 150, 151-152 [1907]).  Indeed, before the enactment of CPL
article 440, no statute provided for an appeal to this Court in
postjudgment proceedings.

        In Crimmins, we relied on those pre-1971 cases as the
foundation for our "hands-off" approach with respect to newly
discovered evidence claims, and imposed a limitation on our power

of review, holding that we could not review the lower courts'
summary denial of a defendant's motion to vacate based on newly
discovered evidence (Crimmins, 38 NY2d at 415-416).  However, CPL
440.10 was not a piecemeal amendment to the Criminal Procedure
Law but, rather, was part of the newly-adopted Criminal Procedure
Law (L 1970, ch 996), which "overhauled and reformulated" the
"whole area of appeals" (Mem in Support and Explanation of
Proposed Criminal Procedure Law, L 1970, ch 996, at 12).[1]  At the
time this Court decided Crimmins, the new Criminal Procedure Law
provided defendants not only a mechanism for appealing a denial
of a CPL 440.10 motion to the Appellate Division (see CPL 450.15
[1]), but also an opportunity to seek leave to appeal to this
Court "from any adverse or partially adverse order of an
intermediate appellate court entered upon an appeal taken to such
intermediate appellate court pursuant to section . . . 450.15 . .
." (CPL 450.90 [1]).

        The Crimmins majority acknowledged that CPL 450.15 (1)
and CPL 450.90 (1) made the denial of a CPL 440.10 (1) (g) motion
appealable, but submitted that merely because the denial of a

---

[1]The Criminal Procedure Law as originally adopted permitted
defendants to appeal the denial of their CPL 440.10 motions to
the appellate division as of right (L 1970, ch 996), but prior to
the statute's effective date of September 1, 1971, the
Legislature amended the Criminal Procedure Law so that a
defendant could only appeal denial of his postjudgment motion to
the Appellate Division by first obtaining permission (L 1971, ch
671, § 1; see Mem of State Executive Department, L 1971, ch 671,
at 2463-2464).

motion was appealable it did not follow that it was also
reviewable, explaining that this Court's review power could not
be expanded by statute alone and that CPL 490.50 (1) "must be
read in context of constitutional limitations," i.e., NY
Constitution, article VI, § 3 (a) (Crimmins, 38 NY2d at 414-415).
That constitutional provision limits this Court's jurisdiction,
as relevant here, to "the review of questions of law except where
the judgment is of death."  As far as jurisdictional rules go,
the Crimmins majority was correct:  although an order may be
appealable to this Court, it may nonetheless not present a
reviewable question of law (see William C. Donnino, New York
Court of Appeals on Criminal Law § 3.1 at 41 [3d ed 2011]).

        We part company with the Crimmins majority not with
regard to its general analysis of this Court's jurisdiction, but
with respect to its postulation that because lower courts have
"unlimited" discretion in deciding whether a defendant is
entitled to vacatur of judgment and a new trial based on newly
discovered evidence, their determination is somehow beyond
reproach (Crimmins, 38 NY2d at 415).  In reaching that
conclusion, the Crimmins majority relied on pre-CPL 440.10 cases
such as Fein, Mistretta, Girardi, Luciano and Bonifacio, decided
at a time when defendants had no statutory mechanism by which to
appeal to this Court from a denial of an application for a new
trial based on newly discovered evidence (see e.g. People v
Baxter, 40 AD2d 551, 551 [2d Dept 1972] [dismissing the

defendant's appeal challenging Supreme Court's denial of his

motion for a new trial based on newly discovered evidence brought

pursuant to section 465 (7) of the Code of Criminal Procedure]).

Now that such mechanisms are in place, defendants whose

newly discovered evidence motions are summarily denied by the

lower courts should have the opportunity, within the strictures

of CPL 450.90 (1), to have those determinations reviewed under

our abuse of discretion standard, which involves a legal, rather

than factual, review.  As the Crimmins dissent acknowledged,

> "whether there has been an abuse of
> discretion is a question of law, not of fact.
> It matters not that the discretion which we
> review necessarily was exercised in a factual
> setting.  And that is so even though we must
> look at the facts in order to determine
> whether the discretion was indeed abused"
> (Crimmins, 38 NY2d at 428[Fuchsberg, J.
> dissenting]; see also e.q. Barasch v Micucci,
> 49 NY2d 594, 598 [1980] ["the possibility
> that the lower court's discretion was abused
> does give rise to a question of law that is
> cognizable in this court"]).

Significant to our analysis is the structure of CPL

440.10 (1) itself and the standard of review we have employed

under distinct provisions of that subsection.  We have exercised

our power of review in the following instances: where the

defendant challenges the lower courts' denial of his CPL 440.10

motion seeking a hearing on his claim that the judgment was

procured by fraud, duress or misrepresentation (see CPL 440.10

[1] [b]; People v Friedgood, 58 NY2d 467, 470 [1983]); where the

defendant seeks a hearing claiming that material evidence adduced

at trial resulting in the judgment was false (see CPL 440.10 [1] [c]; People v Brown, 56 NY2d 242, 246 [1982], rearg denied 57 NY2d 673 [1982]); where the defendant claims that improper and prejudicial conduct occurred off the record during the trial (see CPL 440.10 [1] [f]; Crimmins, 38 NY2d at 418); and where the defendant challenges a judgment on the ground that it was obtained in violation of defendant's state or federal constitutional rights (see CPL 440.10 [1] [h]; People v Baxley, 84 NY2d 208, 212-213 [1994], rearg dismissed 86 NY2d 886 [1995]).

In each of those cases, this Court held that it could review the lower courts' summary denial of a defendant's motion pursuant to CPL 440.10 (1) (b), (c), (f) or (h) by applying the abuse of discretion standard, presumably because such motions were subject to postjudgment judicial review by way of a writ of error coram nobis before CPL 440.10's enactment (see e.g. Baxley, 84 NY2d 212-213; Crimmins, 38 NY2d at 418-419). Section 440.10 (1), however, contains no directive that motions brought under subsections (a) through (i) should be subjected to a different standard of review depending on whether the claim was one traditionally brought through a coram nobis motion or one based on newly discovered evidence. That the Legislature saw fit to place a CPL 440.10 (1) (g) motion in the same category as the other motions that, historically, were brought by coram nobis, clearly demonstrates that the same standard of review should be applied to CPL 440.10 motions brought on the ground of newly

discovered evidence (see Crimmins, 38 NY2d at 429 [Fuchsberg, J. dissenting] [noting that section 440.10 "makes no distinction between posttrial, postjudgment motions, irrespective of whether they are based on newly discovered evidence or not," and observing that the statute did not make any "special distinction for cases that, before 1971, fell within the scope of the common-law writ of coram nobis" such that there was no reason to "carve out an exception for motions on the basis of newly discovered evidence"]).

We therefore make clear that this Court is empowered to conduct a review of the lower courts' summary denial of a defendant's CPL 440.10 (1) (g) motion, and to determine whether that denial constituted an abuse of discretion as a matter of law without running afoul of the jurisdictional limitations set forth in NY Constitution, article VI, § 3 (a). Although we are prohibited from weighing facts and evidence in noncapital cases, we are not precluded from exercising our "power to determine whether in a particular judgmental and factual setting there has been an abuse of discretion as a matter of law" because, in so doing, we are not "passing on facts as such, but rather considering them to the extent that they are a foundation for the application of law" (Crimmins, 38 NY2d at 425 [Fuchsberg, J. dissenting]). That is, in fact, what our abuse of discretion analysis entails, and we now address the underlying procedural posture of defendant's appeal.

II.

In 1981, a jury convicted defendant of rape in the first degree (Penal Law § 130.35 [1]), murder in the second degree (Penal Law § 125.25 [3]) and attempted robbery in the first degree (Penal Law §§ 110 and 160.15 [3]), arising from incidents that occurred in an apartment building on June 2, 1980. Defendant had pursued a mistaken identity defense.

At trial, the only witness who was able to identify defendant as the perpetrator of the crimes was the rape victim, a woman who testified that she and the perpetrator, who had just met, entered an apartment building seeking a place in which to engage in sexual activity. When the woman had second thoughts and began walking away, the perpetrator put a knife to her throat and raped her. She followed the perpetrator down the stairs and observed him, with knife in hand, tussling with another man he encountered on the stairway. The perpetrator stabbed the man, searched his pockets and left the building. When the police arrived on the scene, the woman described the perpetrator as wearing a black hat with netting, and having a chipped tooth and a gap between his teeth. Officers recovered the blood-covered hat -- identified at trial as a blue baseball cap by one of the officers. Four months later, the woman, an admitted heroin user with a $50 a day habit, went to the police station and picked defendant out of a line-up. She testified at trial that she had taken heroin on the morning of the line-up.

Defendant was thereafter arrested and, after trial, found guilty of the offenses set forth above. He was sentenced to an indeterminate term of 18 years to life on the murder count, and concurrent indeterminate terms of 3 to 9 years and 1 1/2 to 4 1/2 years on the rape and attempted robbery counts, respectively. The Appellate Division affirmed (91 AD2d 874 [1st Dept 1982]), and a Judge of this Court denied defendant leave to appeal (58 NY2d 1119 [1983]). Defendant served his sentence and is currently on parole.

### III.

In October 2008, defendant moved pursuant to CPL 440.30 (1-a) seeking an order for DNA testing of any physical evidence that had been secured in connection with his 1981 trial, including, among other things, the rape kit and baseball cap (and hairs recovered from the cap). The People located 18 hairs from the cap, but the remainder of the vouchered evidence -- the cap itself, the rape kit, the knife and the rape victim's clothes -- had been destroyed. The hair samples were sent to the New York City Police Department for microscopic analysis, but a criminalist who examined them concluded that they were not suitable for microscopic comparison or nuclear DNA testing, and suggested that mtDNA[2] testing might yield better results. The

---

[2]This type of testing involves the isolation of the DNA contained in the mitochondria of cells, thereby allowing for the sequencing of the DNA bases to be determined. It is commonly performed on samples that are unsuitable for Restriction Fragment Length Polymorphism and Polymerase Chain Reaction Testing of

People and the defense agreed to send the hair samples to Mitotyping Technologies, LLC, a laboratory specializing in mtDNA analysis, at defendant's expense.

The mtDNA profiles on 3 of the 18 hair samples were compared to the profile of defendant to determine if he could be excluded as a contributor to those hair samples.  According to Mitotyping, that testing resulted in a "consensus profile" that was "very different" from defendant's and excluded him as the contributor of those hairs.  Mitotyping reported that "additional testing could further develop the full profile from additional hairs should an alternative donor/suspect be identified."

With the Mitotyping results in hand, defendant moved to vacate his conviction and for a new trial pursuant to CPL 440.10 (1) (g) on the ground that the mtDNA results constituted newly discovered evidence, or, in the alternative, for an evidentiary hearing pursuant to CPL 440.30 (5).[3]  As part of the motion, defendant submitted the trial transcript and an affidavit from Mitotyping's president and laboratory director, Terry Melton,

---

nuclear DNA, namely, dried bones, teeth, hair shafts and any other sample that contains "very little or highly degraded nuclear DNA" (U.S. Department of Justice, Report from National Commission on the Future of DNA Evidence, Post-Conviction DNA Testing:  Recommendations for Handling Requests at 26-28 [Sept 1999]).

[3]Defendant also moved for vacatur of his conviction and dismissal of the underlying indictment.  The only issue presented on this appeal, however, is whether defendant is entitled to an evidentiary hearing on his newly discovered evidence claim.

Ph.D., who averred that Mitotyping conducted the testing under her supervision and prepared a report based on those findings, which was attached to the affidavit along with her curriculum vitae.

The People responded with an attorneys' affirmation and asked that the court summarily deny defendant's motion without a hearing. Although the People challenged Mitotyping's methodology based on opinions of a doctor from the Office of the Chief Medical Examiner and the Director of the Office of Forensic Science for the New Jersey State Police, those opinions were summarized in hearsay fashion in the body of the People's affirmation and were thus not in admissible form. The People conceded that the mtDNA testing constituted newly discovered evidence, but argued that the results did not require a hearing.

Shortly after defendant filed his CPL 440.10 motion, the Office of the Chief Medical Examiner conducted an analysis of seven fingernail scrapings that had been recovered from the murder victim. DNA had been found on five of the seven scrapings. Only one of the scrapings proved capable of DNA analysis, and that scraping excluded defendant as a contributor.

Supreme Court considered the mtDNA testing of the hairs and the DNA testing of the fingernail scrapings but summarily denied defendant's motion on the papers, stating that the absence of defendant's DNA relative to the few samples that were tested did not exclude defendant as the perpetrator. The court also

relied, in part, on the hearsay allegations of the experts that were contained in the People's attorney's affirmation. A Justice of the Appellate Division granted defendant permission to appeal pursuant to CPL 460.15.

The Appellate Division affirmed in a 3-2 decision (109 AD3d 402 [1st Dept 2013]). The majority held that "even if the reliability of the evidence is assumed, defendant still did not establish a legal basis for ordering a new trial" and, therefore, "the factual disputes in this case were not material, and defendant was not prejudiced by the absence of a hearing" (id. at 403). Indeed, the test results, even if presumed accurate, established, at most, that 3 out of the 18 hairs recovered from the hat came from someone other than defendant and, in light of the strength of the eyewitness testimony at trial -- the rape victim interacted with the perpetrator for at least 15 minutes -- there was no indication that the hair evidence, if introduced at trial, would have resulted in a verdict more favorable to defendant (id. at 404-405).[4] Thus, according to the majority, Supreme Court did not abuse its discretion in summarily denying defendant's motion.

The dissenters argued that "defendant met his burden by offering sworn evidence of mtDNA analysis showing that the hairs

_____

[4]The majority acknowledged that the People's expert analysis -- presented in the People's affirmation and not by way of expert affidavit -- could not provide a basis for denial of the motion as those opinions were not in admissible form (109 AD3d at 404 n 3).

from the perpetrator's hat were not his.  The rebuttal offered by

the People, in the form of an attorney's affirmation containing

hearsay statements questioning the reliability of the mtDNA test

results, is insufficient to discredit defendant's evidence" (id.

at 409).  In the dissent's view, the People's assertions that the

laboratory procedures were flawed, and the results inconclusive,

constituted factual issues that should not have been determined

on the papers (id.).  A Justice of the Appellate Division granted

defendant leave to appeal to this Court pursuant to CPL 460.20.

                              IV.

        A defendant may make a post-judgment application to

vacate his judgment of conviction on the ground that

> "[n]ew evidence has been discovered since the
> entry of a judgment based upon a verdict of
> guilty after trial, which could not have been
> produced by the defendant at the trial even
> with due diligence on his part and which is
> of such character as to create a probability
> that had such evidence been received at the
> trial the verdict would have been more
> favorable to the defendant" (CPL 440.10 [1]
> [g]).

        Once the parties have filed papers and all documentary

evidence or information has been submitted, the court is

obligated to consider the submitted material "for the purpose of

ascertaining whether the motion is determinable without a hearing

to resolve questions of fact" (CPL 440.30 [1] [a]).  Upon

consideration of the merits of the motion, the motion court "may

deny it without conducting a hearing if: (a) the moving papers do

not allege any ground constituting legal basis for the motion"

(CPL 440.30 [4] [a]).  Undoubtedly, then, whether a defendant is entitled to a hearing on a CPL 440.10 motion is a discretionary determination, but, as we now hold today, it is nonetheless one that is subject to our review for an abuse of discretion.

Applying the standard that we now adopt in our departure from Crimmins, we conclude that the Appellate Division abused its discretion when it affirmed Supreme Court's summary denial of defendant's CPL 440.10 (1) (g) motion.

The People do not dispute that the mtDNA testing of the hairs and the DNA testing of the fingernail scrapings constitute newly discovered evidence, nor do they argue that defendant failed to exercise "due diligence" in bringing the motion. Rather, they claim that defendant failed to meet his burden of establishing that the new evidence was "of such character as to create a probability that had such evidence been received at the trial the verdict would have been more favorable to [him]" (CPL 440.10 [1] [g]).

The Appellate Division concluded that even if the reliability of defendant's evidence was assumed, defendant failed to establish a legal basis for a new trial (CPL 440.30 [4] [a]), the factual issues were not material, and that the absence of a hearing did not prejudice defendant (109 AD3d at 403).  We disagree.

The only person who testified at trial as to the identity of defendant as the perpetrator was suffering from a

heroin addiction and had taken heroin the morning of the line-up and was still an addict at the time of the trial.  She nonetheless testified that she interacted with the perpetrator for at least 15 minutes before he attacked her, so any physical evidence, particularly DNA evidence, would have been particularly useful to defendant at the time of trial in order to counter her identification testimony.

We have acknowledged that "forensic DNA testing has become an accurate and reliable means of analyzing physical evidence collected at crime scenes and has played an increasingly important role in conclusively connecting individuals to crimes and exonerating prisoners who were wrongfully convicted" (People v Pitts, 4 NY3d 303, 310 [2005]).  Unlike many newly discovered evidence motions, which, for example, involve affidavits submitted by recanting witnesses (see e.g. People v Avery, 80 AD3d 982, 985-986 [3d Dept 2011], lv denied 17 NY3d 791 [2011]) or witnesses who have come forward after the guilty verdict (see e.g. Crimmins, 38 NY2d at 409), or evidence that another person confessed to the crime (see e.g. People v Feliciano, 240 AD2d 256 [1st Dept 1997]), section 440.10 (1) (g) motions involving DNA testing, analysis and results may not be easily disposed of on the papers, particularly where, as here, the defendant has submitted evidence in admissible form that goes to a central issue in the case, and the People submit only hearsay statements in opposition.

In support of his motion, defendant proffered evidence establishing that 3 of the 18 hairs tested excluded him as a contributor, and that one of the fingernail scrapings containing DNA of someone other than the murder victim excluded him as well. The People responded with a bare attorney's affirmation containing hearsay opinions questioning Mitotyping's methods and attacking the results. They also challenged Dr. Melton's report without proffering an affidavit from an expert of their own to rebut that submission.

On this record, there is a dispute between defendant and the People concerning the reliability of the mtDNA testing, what the results of such testing actually mean and the weight to be given those results in light of the eyewitness identification. As such, defendant should have been afforded a hearing so he could have at the very least an opportunity of "proving by a preponderance of the evidence every fact essential to support [his] motion" (CPL 440.30 [6]), including his assertion that had such DNA evidence been presented at trial, he would have received a more favorable verdict. We reach this conclusion not by weighing the facts or the inferences drawn therefrom, but by examining the parties' submissions and concluding that the People failed to counter defendant's prima facie showing that he was entitled to a hearing. Not every CPL 440.10 motion brought by a defendant will warrant a hearing, nor will every summary denial of such a motion constitute an abuse of discretion, but where, as

here, there is significant DNA evidence favorable to the defendant and the People proffer no admissible evidence in opposition to that evidence, defendant is, at the very least, entitled to a hearing on his motion.

Accordingly, the order of the Appellate Division should be reversed and the case remitted to Supreme Court for further proceedings in accordance with this opinion.

The People of the State of New York v Clifford Jones

No. 219

ABDUS-SALAAM, J.: (concurring)

I agree with the majority that the courts below erred as a matter of law in summarily denying defendant's CPL 440.10 (1) (g) motion.  I write separately because I believe that on this record, the motion court had no discretion to deny the motion without a hearing, but instead was required to conduct a hearing pursuant to CPL 440.30 (5).  Thus, I would not apply an

- 1 -

abuse of discretion analysis in this case because a hearing was required under the statute.

In deciding whether to hold a hearing on a CPL 440.10 motion, a court must look to CPL 440.30 for guidance. That statute instructs on the precise circumstances when the court must "summarily deny" a motion (CPL 440.30 [2]); must grant the motion without conducting a hearing (CPL 440.30 [3]); may deny the motion without conducting a hearing (CPL 440.30 [4]); and must conduct a hearing (CPL 440.30 [5]). CPL 440.30 (5) unequivocally provides that "[i]f the court does not determine the motion pursuant to subdivisions two, three or four, it must conduct a hearing and make findings of fact essential to the determination thereof."

CPL 440.30 (4) gives the court discretion to deny the motion without a hearing in only four enumerated circumstances. The only such circumstance claimed to be applicable here is that the facts alleged do not constitute a legal basis for the motion (see CPL 440.30 [4] [a]). Thus, if defendant's allegations supplied a legal basis for the motion, he was entitled to a hearing as a matter of law (see CPL 440.30 [5]; People v Baxley, 84 NY2d 208, 214 [1994]). Contrary to the People's argument, it is clear that defendant's motion did allege a ground constituting a legal basis for the motion. He alleged that newly discovered DNA evidence, if established, could entitle him to the relief sought. Specifically, he submitted proof of DNA evidence that would have excluded him as a contributor to some DNA recovered

at the crime scene and may have caused a jury to doubt the eyewitness identification that led to his conviction (see People v Ferraras, 70 NY2d 630, 631 [1987][court erred in denying a motion without a hearing where facts "if established could entitle defendant to the relief sought"]).

CPL 440.30 (4) (a) does not require a movant to establish that he or she would ultimately prevail on the merits of the motion in order to be entitled to a hearing (see People v Hughes, 181 AD2d 912, 913 [2d Dept 1992]["That the defendant's chances of ultimate success in meeting his burden of proof with respect to issues raised in his motion (see CPL 440.30 [6]) may be slight, or even remote, does not, by itself, furnish a basis to deny the motion without a hearing"]). Rather, the appropriate threshold question for the court is whether the movant *alleged* any ground constituting a legal basis for the motion. CPL 440.30 (5) clearly contemplates that defendants who make the required prima facie showing have the right to present that evidence at an evidentiary hearing. As was correctly noted by the Appellate Division dissent, "[i]f the defendant produces post-conviction evidence favorable to him or her, CPL 440.30 (5) requires the court to 'conduct a hearing and make findings of fact essential to the determination [of the motion]'"(109 AD3d at 408-409)

In sum, because defendant's motion alleged that he had favorable evidence that could entitle him to the relief sought, and the motion had none of the deficiencies set forth in CPL 440.30 (4) (a) (b), (c) or (d), the court did not have discretion

to decide the motion without conducting a hearing, and such

hearing was required pursuant to CPL 440.30 (5).

*   *   *   *   *   *   *   *   *   *   *   *   *
  *   *   *   *

Order reversed and case remitted to Supreme Court, New York
County, for further proceedings in accordance with the opinion
herein.  Opinion by Judge Pigott.  Chief Judge Lippman and Judges
Read, Smith and Rivera concur.  Judge Abdus-Salaam concurs in a
separate concurring opinion.


Decided December 16, 2014