# State of New York
# Court of Appeals

MEMORANDUM

This memorandum is uncorrected and subject to revision before publication in the New York Reports.

No. 66  SSM 5
The People &c.,
   Respondent,
  v.
Darryl Hemphill,
   Appellant.

Submitted by Claudia Trupp, for appellant.
Submitted by Noah J. Chamoy, for respondent.

MEMORANDUM:

The order of the Appellate Division should be affirmed.

Defendant appeals from the judgment of Supreme Court, Bronx County convicting him after trial of murder in the second degree and sentencing him to twenty-five years to life in prison. The defense was third-party guilt. On appeal, defendant renews his

challenges to the sufficiency of the evidence, the integrity of the grand jury proceedings and various trial rulings.

While there was evidence of third-party culpability, a rational jury nevertheless could have concluded that defendant was guilty (see People v Danielson, 9 NY3d 342, 349 [2007]). The jury was free to reject defendant's claims about the witnesses' initial identifications of someone else as the shooter (cf. Ando v Woodberry, 8 NY2d 165, 171 [1960]). Contrary to defendant's claim that the indictment should be dismissed based on the prosecutor's failure to alert the grand jury to exculpatory evidence that implicated another, the People were not obligated to present evidence that someone else was initially identified as the shooter (see People v Mitchell, 82 NY2d 509 [1993]; People v Lancaster, 69 NY2d 20, 25-26 [1986]).

With respect to the other claims raised by defendant, we note that trial courts possess broad discretion to make evidentiary rulings and control the course of cross-examination (see People v Rouse, 34 NY3d 269, 278-279 [2019]; People v Jones, 24 NY3d 623, 629 [2014]). Here, the trial court did not abuse its discretion by admitting evidence that the allegedly culpable third party pled guilty to possessing a firearm other than the murder weapon. Nor did the court abuse its discretion in its treatment of a controversy concerning counsel's attempt to impeach a witness with her prior grand jury testimony. Notably, counsel failed to request that the witness be recalled for questioning relating to the particular appearance on which counsel relied. Similarly, the trial court acted well within its discretion in admitting photographs of the victim's body as not simply introduced to inflame the jury (see People v Stevens, 76 NY2d 833, 835 [1990]), and in determining that

their relevance was not outweighed by danger of undue prejudice to defendant (see People v Primo, 96 NY2d 351, 355 [2001]).  The trial court's other evidentiary rulings were similarly within the court's discretion, as was the court's denial of defense counsel's same-day oral request to adjourn sentencing to investigate grounds for a possible motion to set aside the verdict (cf. People v Spears, 64 NY2d 698, 699-700 [1984]).

Defendant's remaining contentions are unpreserved or without merit.

People v Darryl Hemphill

SSM No. 5

FAHEY, J. (dissenting):

I would reverse. The trial court abused its discretion in denying defense counsel's request to call as a witness the court reporter in a 2007 grand jury proceeding.

I.

The underlying events began with a street fight in March 2016 between two men, including trial witness Ronnell Gilliam, on the one side, and a group of three men and two women, including trial witness Brenda Gonzalez, on the other. Gilliam's accomplice was described by eyewitnesses as a thin black man wearing a blue shirt or sweater. After the fight broke up, a slim black man in a blue top returned to (or arrived on) the scene with a gun and opened fire. The gunfire killed a two-year-old passenger in a minivan that happened to be in the vicinity.

An eyewitness named Michelle Gist, who had observed the initial fight, but not the shooting, told the police that Gilliam and his best friend Nicholas Morris had been at the scene. Morris was arrested, and ammunition consistent with the type of bullets used in the shooting was found at his apartment. Gonzalez and two of her companions identified Morris in a lineup as the shooter. Meanwhile, at Gilliam's apartment, the police had found a blue sweater inside a plastic bag.

Gilliam turned himself in and spoke with the police. He identified Morris as the shooter. Later, Gilliam returned to the police station, recanted his identification of Morris, and now stated that the shooter had been defendant Darryl Hemphill. During this second interview, Gilliam received a phone call from Morris.

Grand juries were convened in 2006 and 2007, at which witnesses identified Morris as the shooter. At the 2006 grand jury proceedings, held on the basis of the evidence against Morris, Gonzalez did not identify Morris by name as the shooter. At the 2007 grand jury proceedings, Gonzalez expressly identified Morris by name as the shooter.

Morris went to trial for the killing. After a mistrial and a negative DNA swab of the sweater found in Gilliam's home, the People decided to abandon prosecution of Morris. Then, after the DNA on the sweater was found to match Hemphill instead, defendant was arrested.

At the second trial, Gilliam testified, pursuant to a cooperation agreement, that defendant had been the shooter. Gist identified defendant as the thin black man present at the initial fight, but she was impeached with her prior statements to the police that Morris, not Hemphill, had been at the scene. Gonzalez and the others in her party described the shooter as a tall, thin black man in a blue sweater or shirt, without identifying Hemphill specifically.

Defense counsel cross-examined Gonzalez by, among other things, reading her 2007 grand jury testimony, in which she had testified that there was no doubt in her mind that she had seen Morris fire the shot that killed the child. Counsel momentarily confused the dates of the two grand jury proceedings and asked Gonzalez to recall her "2006" grand jury testimony, in which she had not identified Morris by name as the shooter. Gonzalez denied giving the testimony that defense counsel read to the jury. In addition, defense counsel put broader questions to Gonzalez, such as "Did you ever tell . . . any district attorney that there was no doubt in your mind that Nicholas Morris fired that shot . . .?", to which Gonzalez untruthfully replied, "No I didn't."

The trial court then permitted the People to call the 2006 grand jury court reporter to testify that Gonzalez in 2006 had not been asked the questions and had not given the answers that defense counsel had read in court (when reading from Gonzalez's 2007 grand

jury testimony).  In response, defense counsel sought to introduce testimony from the 2007 court reporter that the questions had in fact been asked and answered in 2007.  The trial court did not grant counsel's request, and instead suggested that defense counsel recall Gonzalez, question her about her 2007 testimony, and then call the 2007 court reporter if necessary.  Defense counsel declined this alternative to the request.

On summation, the prosecutor argued that defense counsel had "tried to get Brenda Gonzalez to admit she said things before the grand jury in 2006 she never said" and that the People had called the reporter "to prevent facts from being manipulated."  During deliberations, the jury repeatedly asked to rehear the testimony from the 2006 grand jury reporter.  At this point, the parties discussed the fact that the trial court had precluded the defense from calling the 2007 grand jury court reporter, and the trial court told defense counsel, "[o]kay.  I understand your position.  You have an exception."

## II.

Defendant preserved for our review the issue whether counsel should have been permitted simply to call the reporter (see CPL 470.05 [2] ["a party who without success has . . . sought or requested a particular ruling or instruction, is deemed to have thereby protested the court's ultimate disposition of the matter or failure to rule or instruct accordingly sufficiently to raise a question of law with respect to such disposition or failure"]).  Indeed, the majority agrees.  While it is true, as the majority notes, that "counsel failed to request that [Gonzalez] be recalled for questioning" on her 2007 grand jury appearance (majority op at 2), the majority does not assert that defendant failed to preserve his challenge to the trial court's ruling on calling the court reporter.

## III.

The trial court committed reversible error and denied defendant a fair trial by refusing to allow defense counsel to call the 2007 grand jury court reporter, without recalling Gonzalez. This would have enabled the defense to impeach Gonzalez by confirming that she had in fact identified Morris, by name, as the shooter in 2007. Notably, Gonzalez was asked whether she had ever told a district attorney that Morris was the shooter, and denied doing do, even though she had testified as much in 2007. The trial court issued its ruling despite the fact that the People were permitted to call the 2006 court reporter to testify, in effect, that defense counsel's questioning was disingenuous.

The trial court's refusal to allow defense counsel to correct the record by calling the 2007 court reporter was prejudicial. The ruling left the jury with the impression that the defense had fabricated grand jury testimony, even though it was Gonzalez whose testimony was false. The jury was prevented from learning that Gonzalez had identified Morris as the shooter, by name and under oath, at the 2007 grand jury proceeding. This was error. Although "trial courts have broad discretion to keep the proceedings within manageable limits and to curtail exploration of collateral matters," evidence that tends to show that a witness is fabricating her testimony "is never collateral and may not be excluded on that ground" (People v Hudy, 73 NY2d 40, 56 [1988]). Put another way, "there is no risk of diversionary excursions into collateral matters where '[t]he substance of th[e] contradiction goes to a material, core issue in the case' " (People v Bradley, 99 AD3d 934, 937 [2d Dept 2012], quoting People v Cade, 73 NY2d 904, 905 [1989]).

For these reasons, I dissent.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

On review of submissions pursuant to section 500.11 of the Rules, order affirmed, in a memorandum.  Chief Judge DiFiore and Judges Rivera, Stein, Garcia, Wilson and Feinman concur.  Judge Fahey dissents in an opinion.


Decided June 25, 2020