# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 17
The People &c.,
  Respondent,
  v.
Mark A. Hartle,
  Appellant.

John A. Cirando, for appellant.
Matthew L. Peabody, for respondent.

GARCIA, J.:

Defendant, convicted by a jury of multiple counts of rape and sexual abuse of a fifteen-year-old victim and sentenced to 54 years in prison, asks this Court to deem the summary denial of his motion to vacate his conviction an abuse of discretion. Because the evidence proffered by defendant as "newly discovered" consists of incriminating text

- 1 -

messages and explicit photographs exchanged with the victim that defendant deleted before his arrest and never sought to retrieve before trial, we decline to do so and affirm the summary denial of defendant's CPL 440 motion.

Defendant, 50 years old at the time, was charged in a 31-count indictment with rape and other sex crimes after the 15-year-old daughter of defendant's close friend accused him of raping her repeatedly over several months in 2014. When defendant was arrested, the police secured his cell phone and kept the phone through the end of trial. The police also performed a forensic examination of the victim's cell phone and provided the results, including more than 1200 text messages, to defendant. No exchanges with defendant were recovered. Although defendant and his counsel engaged in extensive pretrial litigation, they never sought to inspect either the victim's cell phone or defendant's cell phone, never informed the People of any relevant evidence on either phone, never filed a motion to compel the production of cell phone evidence, and never issued a subpoena to defendant's cell phone service provider.

The People and defendant's counsel engaged in plea negotiations, and the People ultimately offered defendant a plea bargain pursuant to which he would receive a five-year sentence in exchange for a guilty plea to one count of first-degree sexual abuse. Defendant rejected this offer and proceeded to trial, where the defense theory was that no sexual contact occurred. The victim testified and defense counsel conducted a thorough cross-examination. Defense counsel made ample use of the evidence obtained from the victim's cell phone during this examination, referring to text messages she exchanged with her brother and a close friend and using these messages to question the victim about why she

did not inform anyone of defendant's alleged conduct at the time the incidents occurred. Defense counsel did not ask the victim whether she and defendant exchanged any text messages or photographs or whether she had deleted any such communications. Defendant called no witnesses.

At the close of the People's case, the trial court dismissed two counts of criminal sexual act in the first degree in response to defendant's motion arguing that the People had failed to prove forcible compulsion. During summation, defense counsel argued that "there was no corroboration" for the victim's allegations and that her testimony was "the story of an unsophisticated person trying to deceive." The jury convicted defendant on all remaining counts. Defendant was sentenced to 54 years of imprisonment to be followed by 10 years of post-release supervision, which was later reduced to 42 years and ten months to 50 years pursuant to statute. Defendant appealed, and the Appellate Division affirmed his conviction (*People v Hartle*, 159 AD3d 1149 [3d Dept 2018]). A Judge of this Court denied leave to appeal (31 NY3d 1082 [2018]).

Several years later, defendant moved to vacate his conviction pursuant to CPL 440.10 on two grounds, alleging ineffective assistance of counsel and the discovery of new evidence. Defendant's new evidence claim was based on the recovery of previously deleted text messages and photographs obtained through a forensic retrieval process, called "rooting," that he asserted was not available at the time of trial. Defendant submitted a letter from appellate counsel, affirmed by trial counsel, stating that at the time of trial, no photographs or messages between defendant and the victim were found on the victim's phone, and so trial counsel's "belief was that if any photographs or messages [had] been

on the cellphone they had to have been deleted" and that "neither [attorney] knew of any type of technology that would be able to retrieve such deleted information." Defendant also submitted affidavits and reports from a specialist in "the forensic examination of digital services," describing his unsuccessful attempts in 2017 to perform the rooting procedure of defendant's cell phone to recover the deleted evidence and his ultimate successful completion of the rooting procedure following an update to the software in 2018. Defendant included an affidavit from his mother describing conversations she had with Verizon, defendant's cell phone service provider, attempting to obtain the deleted messages.

During a conference before County Court regarding defendant's motion, after the People asked defendant for additional materials in advance of their responsive papers, defense counsel suggested that he was entitled to examine the victim's phone. County Court echoed counsel's interest in understanding the scope of evidence on the victim's phone and suggested that the People contact the victim to ask her about the recovered messages and why they did not appear on her phone. The People declined to do so, later explaining that they bear no burden on a CPL 440 motion and "it's not our practice on a 440 collateral attack to contact a child victim and cross-examine them."[1]

---

[1] The dissent's assertion that defendant was entitled to a hearing merely because "the victim's cell phone was never produced for forensic examination by the defense" is incorrect (dissenting op at 9 n 4). Before trial, defendant was provided with a copy of the entire contents of defendant's phone. Defendant never requested to inspect the phone before trial. Defendant's filing of a CPL 440 motion did not entitle him to access the victim's phone years after his conviction. The dissent's suggestion that it does is indeed a "burden of production contrary to the statutory language" (dissenting op at 2).

County Court subsequently denied defendant's motion without a hearing (*People v Hartle*, 64 Misc 3d 1233[A], 2019 NY Slip Op 51395[U] [County Ct, St Lawrence County 2019]). The court rejected defendant's claim of newly discovered evidence, explaining that the letter "affirmed by trial counsel is conclusory in nature and fails to demonstrate due diligence on trial counsel's part to confirm that retrieval of the deleted media was truly not possible at the time of trial in 2015," that the expert affidavit and report "are similarly flawed, as they fail to address efforts made at retrieval during the time of trial," and that "there is no indication that trial counsel made effort[s] to obtain the material from defendant's cell phone service provider" (*id.* at *3). Moreover, County Court rejected the "portrayal of the recovered photographs and text messages as newly discovered evidence" because defendant "knew that the media existed prior to trial," "he actively endeavored to delete the evidence from his cell phone," and "was part and parcel to the exchange, and, as such, he knew full well of the communications and the factual information contained therein" (*id.*). County Court faulted defendant for seeking to use material "initially lost as a result of defendant's spoliation of evidence . . . to his benefit" and held that, "[h]aving been found guilty after trial, defendant should not now be permitted to rely upon material he previously deleted in an effort to cover up his criminal conduct" (*id.* at *4).

The Appellate Division affirmed, explaining that "[t]o hold otherwise would create the rule that a defendant can destroy evidence he or she deemed inculpatory and then subsequently benefit from advances in technology to resurrect that evidence if it later appears beneficial" (192 AD3d 1199, 1203 [3d Dept 2021]). A Judge of this Court granted leave to appeal, and we now affirm (37 NY3d 1027 [2021]).

CPL 440.10 (1) (g) empowers a trial court to vacate a conviction on the basis of newly discovered evidence "which could not have been produced by the defendant at the trial even with due diligence on his part and which is of such character as to create a probability that had such evidence been received at the trial the verdict would have been more favorable to the defendant; provided that a motion based upon such ground must be made with due diligence after the discovery of such alleged new evidence."  The burden is on the defendant on a CPL 440 motion; as we have explained previously, "the statute is plain that the initial failure by a defendant to carry his or her burden of coming forward with sworn allegations substantiating the essential facts in the 440 motion does not shift the burden to the People in their responsive pleadings" (*People v Wright*, 27 NY3d 516, 522 [2016]).  We review a trial court's summary denial of such a motion for abuse of discretion (*see People v Jones*, 24 NY3d 623, 630 [2014]).  County Court did not abuse its discretion in denying defendant's motion without a hearing.

As County Court determined, the evidence proffered is far from newly discovered—it is evidence the defendant knew about, was involved in the creation of, and believed he destroyed well before trial in an effort to conceal criminal activity.  As defendant affirmed, he "deleted the photographs and/or text messages because [he] did not want anyone to see them."  This is unsurprising given that the material, including nude photographs he took of the victim, was compelling evidence of his sexual contact with a minor.  Defendant cannot now claim that because certain "technology" was not available to recover the incriminating texts and photographs that he attempted to destroy, that material, now recovered, somehow qualifies as "newly discovered evidence."

Nor has defendant met CPL 440.10 (g)'s due diligence prong, which requires that defendant show that the evidence could not have been produced at the trial even with due diligence on the part of defendant. Nowhere in defendant's conclusory submissions is there any showing that the evidence was inaccessible before trial, or any indication that defendant tried to obtain it. Defendant received the State Police report of the evidence extracted from the victim's cell phone well before trial, at which point defendant was aware that the messages were not recovered from her device. Defendant took no action in response; for example, he did not seek to obtain the materials from his cell phone service provider or a forensic examination of his phone or the victim's phone. Rather, he used the absence of evidence corroborating the victim's testimony to his advantage, pursuing a trial strategy of actual innocence instead of alerting the People to potential evidence that would have essentially proven his guilt of certain crimes, both charged and uncharged.

The assertions in defendant's papers—from his attorneys, who state they did not believe the text messages were recoverable; from his mother, who claims she tried to call Verizon and ask for the deleted messages; and from defendant himself, who now represents that it was "everyone's belief that such deleted material could not be recovered"—are all inadequate, conclusory, and self-serving. Because the statute's focus is on "the evidence's *availability* at the time of trial" (dissenting op at 7 [emphasis in original]), it is incumbent upon defendant to show an effort to obtain that evidence before trial. The existence of rooting technology that enabled the recovery of deleted messages on defendant's phone in 2018 is not evidence that no method existed to recover these messages in 2015. Nor has defendant made any representation as to the ability, at that time, of defendant's cell phone

service provider to retrieve messages that had been so recently deleted.  Defendant's affidavit states that "[t]he photographs and text messages demonstrate that [the victim] did not testify truthfully"—an argument his counsel advanced at trial.  With the knowledge that he had, defendant could, of course, have cross-examined the victim at trial regarding whether she had exchanged text messages or photographs with defendant—he simply chose not to.  Failure of his trial strategy does not permit defendant to resurrect his communications with the victim as newly discovered evidence.

This is not hypothetical case A (dissenting op at 5,7 [defendant convicted of murder where decedent left a suicide note later hidden by a third party]) or B (*id*. [defendant sees the suicide note but could not find it after he was charged with decedent's murder]).  There are no "novel questions" here, nor are we concerned with the "outer limits of a proposed legal rule" (dissenting op at 3, 5 n 2).  Rather, we apply our established approach to collateral attacks on a verdict brought pursuant to CPL 440 to a record demonstrating that before his arrest for sexually assaulting the 15-year-old victim, defendant deleted incriminating evidence of sexual contact with her and never sought to retrieve that deleted information before trial.  As a result, he failed to meet his burden under CPL 440 and the trial court did not abuse its discretion in denying the motion without a hearing.

We have considered defendant's claim of ineffective assistance of counsel and hold that it is meritless (*see Wright*, 27 NY3d at 522).  County Court did not abuse its discretion in denying defendant's motion pursuant to CPL 440.10 (h) without a hearing.

Accordingly, the order of the Appellate Division should be affirmed.

RIVERA, J. (dissenting):

Defendant Mark Hartle moved pursuant to CPL 440.10 (1) (g) for a postconviction hearing to consider whether he was entitled to a new trial based on newly discovered evidence consisting of previously deleted text messages and photographs that he alleged were recoverable only with the use of technology developed after judgment. Defendant relied, in part, on a digital forensic expert's report which explained that, after an initial

- 1 -

postjudgment attempt to recover the material failed, the expert eventually succeeded in recovering the material only after the software that he used was updated. That report, along with the other documents proffered with defendant's motion, entitled defendant to a hearing on whether the evidence was newly discovered and, if so, whether he acted with due diligence in moving for relief and established a probability that admission of the evidence would have resulted in a more favorable verdict.

The majority creates a due diligence discovery standard and burden of production contrary to the statutory language in order to deprive defendant of this opportunity, which undermines the purpose of CPL 440.10 (1) (g) and the truth-seeking function of our legal system. Therefore, I dissent.

## I.

After his conviction of several counts of rape, criminal sexual act, and sexual abuse involving a minor, defendant moved, pursuant to CPL 440.10 (1) (g) and (h), for a postconviction hearing based on newly discovered evidence and ineffective assistance of counsel. Although I agree with the majority that County Court properly denied defendant's motion to vacate the judgment on the latter ground, the court should have granted a hearing on defendant's claim of newly discovered evidence that he alleged showed the victim's consent and negated the forcible compulsion element of several of the counts. The Appellate Division affirmed the denial of the motion without a hearing, agreeing with County Court that the evidence proffered was not newly discovered because defendant knew it existed before trial (*see* 192 AD3d 1199, 1202-1203 [3d Dept 2021]). The Court

reasoned that holding otherwise would permit a defendant to destroy inculpatory evidence and use technological advances to "resurrect" that same evidence if they later determined that the evidence would be "beneficial" (*id.* at 1203). Neither ground justifies denying defendant a hearing.

## II.

This appeal presents two novel questions concerning the definition of "new evidence" under CPL 440.10 (1) (g): first, whether evidence that is inaccessible at the time of trial, but later recovered postjudgment through the use of new technology, is "new evidence [that] has been discovered"; and, second, whether defendant's own destruction of that same evidence before trial forecloses postconviction relief. A related subsidiary question is how a defendant's knowledge of the existence of the evidence prior to the verdict informs resolution of these two core questions.

Beginning with the statutory language (*see Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998]), CPL 440.10 (1) (g) provides that a defendant may seek to vacate a judgment of conviction where

> "[n]ew evidence has been discovered since the entry of a judgment based upon a verdict of guilty after trial, which could not have been produced by the defendant at the trial even with due diligence on [their] part and which is of such character as to create a probability that had such evidence been received at the trial the verdict would have been more favorable to the defendant; provided that a motion based upon such ground must be made with due diligence after the discovery of such alleged new evidence."

As is clear from the language, evidence falls within the scope of this provision if three elements are satisfied: (1) the evidence is discovered after trial and entry of judgment; (2) the defendant could not have produced the evidence at trial "even with due diligence" in trying to obtain it; and (3) there is "a probability" that the evidence would have led to a "more favorable" verdict for the defendant.[1]

Turning to the first question, CPL 440.10 (1) (g), by its plain terms, applies regardless of whether the evidence existed at the time of trial because the statute requires only that the evidence could not have been "produced . . . at trial," meaning that the defendant could not have proffered that evidence. Put a different way, if a change in circumstances enables a defendant to produce material evidence that the defendant could not access at trial, the defendant may argue postjudgment that the evidence has been newly discovered, even if the defendant knew that the evidence existed before or during trial. Contrary to the majority's view, there is no justifiable distinction between evidence that did not exist before trial and evidence a defendant knew existed at one time but had no way to access for use at trial. In both scenarios, the defendant could not put the evidence before the trier of fact for it to weigh in assessing whether the prosecution has proved the defendant's guilt beyond a reasonable doubt.

This interpretation is further supported by the statute's lack of a due diligence requirement for actually producing the evidence at trial, although requiring that a defendant

---

[1] The statutory standard is derived from our common law rule (*see People v Salemi*, 309 NY 208, 215-216 [1955]; *People v Priori*, 164 NY 459, 472 [1900]).

act diligently to file the motion once the evidence is discovered. Rather, the statute requires only that a defendant prove, counterfactually, "that [the evidence] *could not have been produced* by the defendant at the trial *even with due diligence*" (CPL 440.10 [1] [g] [emphasis added]). The statute thus focuses on the availability of the evidence for use at the time of trial, rather than what would necessarily constitute a defendant's futile attempts at securing it. A few hypotheticals illustrate the proper application of the statute.[2]

Hypothetical A: A jury convicts a defendant for murdering their employer. Defendant maintains their innocence. After trial, the defendant learns that the decedent left a suicide note which the decedent's spouse hid in order to collect on their life insurance policy. The note existed at the time of trial, but defendant did not know of it or even have reason to consider that this was a death by suicide. Thus, the defendant could not have produced the evidence at trial and, because this creates "a probability" that the jury would have acquitted the defendant of murder, the note is "[n]ew evidence" under CPL 440.10 (1) (g).

Hypothetical B: Assume that the defendant actually saw the note before the death of the employer, but could not produce evidence of the note's existence and nothing else suggests that the death was a suicide. If the note is then found after entry of judgment, the

---

[2] The majority makes the irrelevant point that my hypotheticals are factually distinguishable from this appeal (*see* majority op at 8). Hypotheticals are effective thought exercises to test the premise and outer limits of a proposed legal rule and when deployed in a judicial opinion they have the added benefit of illustrating the rule in application. Indeed, judges, including United States Supreme Court Justices and members of this Court, lawyers, and educators regularly deploy hypotheticals orally and in writing to illustrate legal doctrine and praxis. We expect litigators to address hypotheticals from the bench during oral arguments for this very reason.

note is evidence within the scope of CPL 440.10 (1) (g), even though it existed at the time of trial and defendant knew of its existence but could not produce it.

Before addressing the second question presented on this appeal regarding defendant's destruction of the evidence, it is necessary to consider how the statute applies to destroyed evidence generally. Obviously, it takes no huge leap of logic to realize that evidence cannot be produced if it is not accessible, regardless of whether it was destroyed. While in the past, destroyed evidence was likely lost for all time, the proliferation of digital communication and technological advancements that permit recovery of deleted digital materials increases the possibility that more evidence will fall within the scope of CPL 440.10 (1) (g). There is much benefit from this new accessibility. Indeed, consideration of such evidence through new technology furthers the factfinding process and society's interest in avoiding wrongful convictions and putting to rest unsubstantiated claims of innocence (*see e.g. People v Jones*, 24 NY3d 623, 635-636 [2014] [ordering hearing on new forensic DNA method]; *People v Bailey*, 47 Misc 3d 355 [Monroe County Ct 2014] [holding hearing where prosecution contested defendant's claim that change in scientific and medical understanding of so-called shaken baby syndrome was new evidence], *affd* 144 AD3d 1562 [4th Dept 2016]; *People v Chase*, 8 Misc 3d 1016[A], 2005 NY Slip Op 51125[U] [Washington County Ct 2005] [holding hearing where prosecution contested defendant's claim that change in scientific understanding of physics of propane dispersal was new evidence]; Innocence Project, *DNA Exonerations in the United States*, https://innocenceproject.org/dna-exonerations-in-the-united-states/ [last accessed Feb. 23, 2023]; Kashmir Hill, *The Exoneration Machine*, NY Times, Nov. 24, 2019, § BU at 1, col

1, available at https://www.nytimes.com/2019/11/22/business/law-enforcement-public-defender-technology-gap.html [last accessed Feb. 23, 2022]). The narrow view advocated by the prosecution—that CPL 440.10 (1) (g) should be limited to evidence not in existence at the time of trial—is contrary to the broad language adopted by the legislature and would dramatically limit the bases for overturning wrongful convictions.

Returning to hypotheticals A and B, consider what would happen if the decedent's spouse destroyed the note upon finding it, but unbeknownst to them, the decedent saved the text of the note on their computer and—after printing and signing the note—deleted the electronic version. Assume further that the defendant had no knowledge that the note was computer generated or deleted until after the spouse's death, at which point the decedent's children successfully retrieved the computer files, including the note, which they sent to the defendant's lawyer. The defendant may submit this evidence in support of a motion under CPL 440.10 (1) (g), even though the note was destroyed prior to trial. Indeed, regardless of whether the note was recovered by application of software available at the time of trial or with technology developed after the judgment, the result is the same: retrieved data of the note's content is "[n]ew evidence" that the defendant could not have produced at trial (CPL 440.10 [1] [g]).

As this discussion illustrates, the statute does not treat as dispositive the pretrial existence of the evidence, whether or not the defendant knew about it. Instead, what matters is the evidence's *availability* at the time of trial (i.e., whether the defendant could have produced the evidence in time to influence the outcome). For the same reasons that favorable evidence unknown to the defendant and later brought to their attention may be

submitted in support of CPL 440.10 (1) (g) motion, so may evidence known but inaccessible to a defendant be the legal basis for such motion (*see* CPL 440.30 [4] [a]).


III.

Turning to the second question, regarding whether evidence destroyed by a defendant falls within the scope of CPL 440.10 (1) (g), we can first recognize that the evidence may still constitute "[n]ew evidence" if later recovered where the destruction was innocent or mistaken (i.e., without knowledge of its potential exculpatory nature), and not carried out to avoid prosecution. Suppose, for example, a defendant had an extramarital affair during which the couple shared compromising text messages and photographs before deleting them from their respective cell phones. Later, the defendant realized that the data provides the only evidence of an alibi relating to various criminal charges. The lover denied the affair at trial and has since destroyed their cell phone, and no other evidence of the affair existed. If the defendant is able to recover the text messages and photographs with technology developed after their judgment of conviction, the statute permits its consideration as part of a motion to vacate that judgment.

A different case is presented where a defendant deletes digital materials in anticipation of prosecution, such as after questioning during an investigation, or pending trial. The Appellate Division concluded, and the majority also suggests (*see* majority op at 6), that CPL 440.10 (1) (g) should not apply where a defendant destroys inculpatory evidence and subsequently attempts to use it to upset the verdict. I agree that the law should not tolerate such gaming of our criminal legal system and that such conduct is not what the

legislature intended when it enacted CPL 440.10 (1) (g). However, I disagree that this conclusion can be made on defendant's motion without a hearing.[3] The proper course in this case would be to hold a hearing so that the court may fully consider, based on the testimony and documentary evidence presented, whether defendant pursued a defense that he had no sexual contact with the victim as his best defense in light of the available evidence, and whether his argument that the evidence is only now recoverable is a contrivance to avoid the consequences of a failed trial strategy in hopes of pursuing a different defense based on lack of forcible compulsion at a new trial (*see Salemi*, 309 NY at 221-222).[4]

## IV.

The remaining question presented concerns the minimal showing required for a court to grant a hearing on the motion, a standard which the majority misapprehends. The answer is found in the Criminal Procedure Law and our case law. Under CPL 440.30 (4) (b), a court "may deny" a CPL 440.10 motion "without conducting a hearing if," inter alia,

---

[3] The legislature is of course free to consider whether that policy consideration should not matter in the text of CPL 440.10 (1) (g), which, as written, requires only that a defendant could not have produced the evidence at trial and makes no mention of the reason for the unavailability.

[4] Even if evidence destroyed by a defendant cannot be the basis for CPL 440.10 (1) (g) motion, the motion should not have been denied here without a hearing since the text messages and photographs were digital correspondence between defendant and the victim and defendant did not destroy the evidence from the victim's cell phone, which was never produced for further forensic examination by the defense.

"[t]he motion is based upon the existence or occurrence of facts and the moving papers do not contain sworn allegations substantiating or tending to substantiate all the essential facts." If that is not the case (and the court does not summarily grant the motion), the court "*must* conduct a hearing" (CPL 440.30 [5] [emphasis added]). In other words, the statute creates a presumption that a hearing will be granted; only in the limited circumstances set out therein may a court avoid that obligation.

Here, the motion court abused its discretion in denying defendant's motion without a hearing (*see People v Dogan*, 37 NY3d 1007, 1007 [2021]; *People v Wright*, 27 NY3d 516, 520 [2016]; *People v Jones*, 24 NY3d 623, 630 [2014]). Initially, I disagree with the majority's characterization of defendant's motion papers as "inadequate, conclusory, and self-serving" (majority op at 7). The papers contained sworn allegations from: (1) trial counsel, both of whom asserted that they did not believe that the deleted materials were recoverable from defendant's cell phone; (2) defendant's mother, who stated that on several occasions she requested that the State Police turn over defendant's cell phone and that defendant's cell phone provider deliver copies of defendant's text messages; and, (3) critically, a forensic expert, who stated in two reports and an affidavit that he was only able to recover the materials from defendant's cell phone after the software that he used to "root" defendant's cell phone had been updated.[5] The expert's second report, the findings

---

[5] "Rooting enables users to perform higher privileged functions on a device than are ordinarily possible under regular user mode. . . . The process typically exploits a security flaw in a specific device or operating system and may lead to further security vulnerabilities" (Justin Grover, *Android Forensics: Automated Data Collection and Reporting from a Mobile Device*, 10 Digit Investigation S12, S13-S14 [2013]).

of which he affirmed in his affidavit, stated that, in April 2017 (almost one full year after trial), the rooting software that he used "was designed to be compatible with the make and model of the phone, but was incapable of successfully breaking the security of the device." He explained, however, that although that initial attempt had failed, generally, "[a]s rooting software is continually updated and enhanced, it will . . . be able to break the security of a larger number of older devices that were previously inaccessible." Thus, after the software had been updated, the expert attempted to root the cell phone again in October 2018. This time, he "successfully completed the rooting procedure" in "approximately five minutes" and extracted the deleted text messages and photographs.

The majority's contention that those statements were insufficient to warrant a hearing ignores CPL 440.30 (4)'s allowance for denial of the motion without a hearing only if the moving papers lack "sworn allegations substantiating or tending to substantiate all the essential facts." It is undisputed that the text messages and photographs were deleted; at a minimum, defendant's papers tend to substantiate his claim that they were not recoverable at the time of trial. That was enough to entitle him to a hearing under the statute, which does not require certain proof of the facts on submission.

V.

We are all benefited by getting to the truth. The legislature recognized that core objective of our judicial system with its enactment of CPL 440.10 (1) (g) which allows for consideration of evidence discovered after judgment where such evidence carries a probability of a more favorable outcome for a defendant. The legislature has also limited

the circumstances in which a court may deny the motion without a hearing, setting forth specific requirements in CPL 440.30 (4) (b) for a judicial disposition on the motion papers. The majority applied a standard that requires more than the legislature has deemed necessary. This of course we cannot do.

Defendant submitted sworn statements and an expert report describing their pre- and posttrial efforts to secure his cellular phone and the materials deleted therefrom and asserting that access to this evidence was possible only by application of postjudgment newly updated technology. Therefore, I would reverse and remit to County Court for a hearing on defendant's motion that the text messages and photographs are new evidence discovered after the judgment of conviction and that the evidence creates a probability of a more favorable outcome for defendant on the counts that require the prosecutor to prove beyond a reasonable doubt defendant's forcible compulsion of the victim.

Order affirmed. Opinion by Judge Garcia. Judges Singas, Cannataro and Troutman concur. Judge Rivera dissents in an opinion, in which Chief Judge Wilson concurs. Judge Halligan took no part.

Decided April 20, 2023